**NATIONAL LABOR RELATIONS BOARD v. AMERICAN POTASH & CHEMICAL CORPORATION (INDEPENDENT CHEMICAL WORKERS UNION, Intervenor).**

No. 8681.

Circuit Court of Appeals, Ninth Circuit.

June 27, 1940.

234

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Malcolm F. Halliday, Asst. Gen. Counsel, Richard A. Perkins, and A. Norman Somers, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

Gibson, Dunn & Crutcher, J. Stuart Neary, and Henry B. Ely, all of Los Angeles, Cal., for respondent.

John K. Hagopian, of San Francisco, Cal., for intervenor.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

The National Labor Relations Board filed a petition alleging that respondent American Potash and Chemical Corporation, hereafter called Potash, has committed certain acts in violation of three of our orders of June 27, 1938, in the case of National Labor Relations Board v. American Potash & Chemical Corporation, as set forth in our opinion reported in 9 Cir., 98 F.2d 488. Attached to the petition are supporting affidavits. An order to show cause was issued and Potash answered, joining issue with the allegations of its contumacious conduct, to which are attached its affidavits. The orders charged to be violated commanded Potash to:

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

"a. Offer to Earl Wright * * * [and others] immediate and full reinstatement, respectively, to their former positions, without prejudice to their seniority or other rights and privileges;

"b. Make whole said Earl Wright * * * [and others] for any losses of pay they have suffered by reason of their discharge and J. L. Ivers for any loss of pay he has suffered by reason of his demotion, by payment, respectively, of a sum of money equal to that which each would normally have earned as wages during the period from the date of his discharge, and with respect to J. L. Ivers, from the date of his demotion, to the date of such offer of reinstatement, less the amount which each has earned during that period;"
and to cease and desist:

"1. * * *

"c. From in any manner dominating or interfering with the administration of the Allied Chemical Workers' Association, or any other labor organization of its employees, and from contributing support to the Allied Chemical Workers' Association, or to any other labor organization of its employees."

 (a) With regard to our orders 2a and b, first, to reinstate the employees and, second, to make them whole, the affidavits of Potash show that they had never been obeyed by an unconditional offer to restore the men to their positions before determining their back pay. On the contrary, it appears that the unemployed men were offered their back pay with an additional bonus of 12½ percent if they would enable Potash to avoid our order by resigning their right to reinstatement.

The duty of an employer to reinstate arises from the statute's specific provision for such a mandate to effectuate the purposes of the Act, 29 U.S.C.A. § 151 et seq.

That purpose is not effectuated by a mere giving of a private right to the unemployed man to be surrendered for a price. The primary purpose is not to create a remedy in the discharged employees. It is to safeguard the employees' right, declared in section 1 of the Act, to self-organize or join an existing labor organization, by making it not only a costly matter to the employer to discharge men for exercising that right, but also by depriving him of any prestige he may have for ridding his organization of those who oppose his attempt so to destroy their right to organize.

The employer is not to be left in a condition to say to like-minded associates seeking to defeat the purposes of the Act, "It cost me a pot of money, but no man who has opposed me in forming a union ever worked in my plant again."

■ One would be blind to the spirit which dominates his creative life in his company not to realize the destructive effect on the laborer of the loss of his place in the organization. "Not to belong" has in it all the poignant misery that O'Neil has shown in his tragedy of the Hairy Ape. The loss of a job means much more to an American laborer than the absence of his pay check. There is the deeper fear that he and his family may become one of a permanent class of the jobless and indigent. Cf. National Labor Relations Board v. Sterling Electric Motors, Inc., 9 Cir., decided May 7, 1940, 112 F.2d 63. The Labor Act intends that the employer so shall not punish men who oppose his will in seeking to organize for collective bargaining.

■ The restoration must precede the determining of the back wages. In nearly all cases this will be a matter of negotiating with the men having the backing of the successful organization which the employer has attempted to prevent from bargaining collectively with him. The restored employee, as distinguished from the discharged one, technically made an employee by the statute, has the security and restored confidence necessary to participate in negotiations for the determination of his back wages. What Congress has said about the disadvantage of the employee in bargaining with the employer[1] applies a fortiori to the discharged workman.

■■ With respect to the particular negotiations for the settlement of back wages between Potash and the discharged employees, Potash made a motion at the hearing for the enforcement of the Board's orders to have this court hear and determine its propriety before it paid the men the agreed amounts. We held that this was a matter of compliance with the orders the Board was seeking to make effective through our decree and not a part of the proceeding to secure that order. National Labor Relations Board v. American Potash & Chemical Corp., 9 Cir., 98 F.2d 488, 492. The Act contemplates this will be a matter of the Board's cognizance since under section 10(c) of the Act the Board may require Potash "to make reports from time to time showing the extent to which it has complied with the order."

However, Potash relied on cases making it impossible to say that its motion was not in good faith. If granted it would have opened up the facts as to the method in which the settlement was procured from the men. The making of such a motion demonstrates an absence of a contumacious attitude toward the court or the Board at that time. We hence feel that, though the admitted failure to reinstate is a continuing violation of our order and that the back pay cannot be determined until such restoration, Potash need do no more to purge itself of its contempt than make the ordered restoration and payment of back pay within sixty days from the date of our decree.

■ (b) With regard to the claimed violation of our cease and desist order (c), the allegations of the Board's petition show a different situation from the continuing and present violation of the order for restoration and back pay. The Board charges that Potash "sponsored and procured the formation of a labor organization known as the Independent Chemical Work-

---

[1] "The inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association substantially burdens and affects the flow of commerce, and tends to aggravate recurrent business depressions, by depressing wage rates and the purchasing power of wage earners in industry and by preventing the stabilization of competitive wage rates and working conditions within and between industries." 29 U.S. C.A. § 151, Act July 5, 1935, c. 372, § 1, 49 Stat. 449.

ers' Union" and has dominated and interfered with the administration of that union.

As to this alleged violation of the cease and desist order the Board waited until 13 months after the alleged acts to advise this court of the affront to its dignity or to that of the Board whose order we enforced.

A part of the Board's contention in both brief and argument here is that there was no supersedeas to our cease and desist order (c). Hence it was contemptuous at once to disobey it. Merrimack River Savings Bank v. City of Clay Center, 219 U.S. 527, 536, 31 S.Ct. 295, 55 L.Ed. 320, Ann. Cas.1912A, 513. The Board does not contend that there was any delay in its discovery of the facts but explains its failure to prevent the claimed contemptuous continuance of the alleged domination of the union, formed 15 months before, with the claim that it would be more convenient to wait until the expiration of a stay of the provisions of our affirmative order 2a and b and seek punishment for both contempts at once. It is obvious that the charged offenses are entirely different in character and that if the domination happening over a year before were sufficiently substantial to constitute contempt, no mere convenience of the court or Board warrants such a delay.

The employees, of course, had the right to form another union. While the affidavits disclose circumstances surrounding its formation which arouse suspicion that the movement may have been inspired by the employer, we regard the showing as weak. The argument of the Board on this phase is more or less synthetically built up. There is no showing of any act of domination by Potash within 13 months prior to the filing of the Board's petition. All the pertinent allegations are contradicted by the affidavits of Potash's witnesses. That 13 months has obscured the memory of these employees as to the happenings in the emotions aroused by this controversy with their employer is apparent from the affidavits and we do not believe a reference for further exploration of the charge of disobedience of our order 1 (c) is required to vindicate the authority of the court or aid to effectuate the purposes of the Act.

We order entered a decree conforming to this opinion holding Potash in contempt for violating our order of restoration and back pay and discharging the order to show cause in so far as it concerns the charge

that Potash be held in contempt for the alleged dominance over the Independent Chemical Workers Union.

STEPHENS, Circuit Judge (concurring).

I concur in the opinion with regard to the failure to comply with our orders 2(a) and (b) and in the result with regard to the dismissal of the order to show cause with reference to our order 1(c).