**CALIFORNIA LUMBERMEN'S COUNCIL et al. v. FEDERAL TRADE COMMISSION.**

No. 8984.

Circuit Court of Appeals, Ninth Circuit.

Oct. 1, 1940.

Rehearing Denied Nov. 19, 1940.

Morgan J. Doyle, of San Francisco, Cal., for petitioners.

W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and Daniel J. Murphy and James W. Nichol, Special Attys., all of Washington, D. C., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is a petition to review an order issued by the Federal Trade Commission against Petitioners in which Petitioners are ordered to cease and desist the doing of certain acts. 15 U.S.C.A. § 45.

On August 14, 1936, the Commission issued a complaint against the petitioners alleging a violation of fair methods of competition in interstate commerce in the manner following: The petitioners, as it was alleged and found to be true, were organized in the State of California for the purpose of engaging in carrying out a program, policies and aims of the California Lumbermen's Council, composed of affiliates under different names or titles, which affiliates include "Petitioners". The California Lumbermen's Council and affiliated organizations have as their membership retail dealers in, and vendors of, lumber and building materials. Such dealers and vendors are persons, partnerships and corporations who, as dealers and vendors, are engaged in the business of buying, selling, and distributing to contractors, builders, dealers, consumers and other purchasers, lumber and building materials. Petitioners in the course and conduct of their business purchase lumber and building materials from manufacturers, producers and distributors in various States and cause such lumber and building materials to be shipped and transported to warehouses, places of business and to customers from points in one state to points in the same state, and from points in one state to points in another state.

The petitioners constitute a large portion of those conducting the building material and lumber business in Pacific Coast and contiguous states, and are and have been in actual and potential competition with each other and with non-members dealing in the same type of materials. That this group of petitioners constitute such an influence in the trade of such materials in interstate commerce that they are enabled to and do promote and enhance their own volume of trade and profit by confining the sale and distribution of such materials largely to the petitioners and members thereof; to induce, require and compel manufacturers and producers of said materials to refrain and to cease and desist from selling or distributing said materials to others and affiliates; thereby compelling non-members to purchase said materials through members of petitioner's organizations upon terms and conditions imposed by petitioners. The petitioners, by combining, confederating and conspiring together, have interfered with trade in interstate commerce in an unfair and unlawful manner by limiting trade to members; boycotting and threatening to boycott manufacturers and producers dealing with non-members; issuing quotas of sales for members within certain districts; imposing fines and penalties for violation of the orders of the petitioners; controlling prices by issuing uniform price lists to members thereby enhancing the natural and normal profit ordinarily obtained through free competition.

Issue was formed by the filing of an answer and evidence was taken before a trial examiner designated for this purpose by the Commission. A transcript of the trial was filed with the Commission and after examination thereof findings of fact, generally in accordance with the complaint, and an order for the petitioners to cease and desist in their practices and policies were made by the Commission. The petitioners do not attack the sufficiency of the evidence to support the findings of fact but petitioners claim that the transcript of the record is not a complete or a sufficient record of the proceedings. The order itself is attacked.

Following the filing of petitioners' petition for a review in this court, the Commission filed a transcript of record and petitioners filed a motion for an order to: (a) Strike from the files the transcript of the record filed by the Commission. (b) Require the Commission to file a complete and entire record of the proceedings below, or in the alternative, vacate the cease and desist order made by the Commission. A like motion had been filed with the Commission and had been denied. This court denied the motion. 9 Cir., 103 F.2d 304.

Subsequently, another motion by petitioners requesting an order commanding the Commission to file a Supplemental Transcript of Record was denied by this Court. 9 Cir., 104 F.2d 855.

The points relied upon in the petition for review will be taken up in the order of their statement in petitioners' opening brief.

The first point raised is: "The Commission was without power or jurisdiction

to issue the cease and desist order against any of the petitioners who were not served with a copy of the complaint."

■ The statute, 15 U.S.C.A. § 45 is relied upon as requiring proof of service as a jurisdictional requisite. As in any in personam action there must be jurisdiction over the parties sought to be affected by any order of the Commission. In answer to this point, the Counsel for the Commission takes no issue with the cases relied upon by petitioners but claims there is sufficient proof of service and that the record shows that a general appearance of Morgan J. Doyle as their attorney for all petitioners. That such an appearance has been made is made clear by an examination of the record.

The Complaint by which the original proceeding was instituted before the Federal Trade Commission is entitled "In the Matter of California Lumbermen's Council (then follows other names). In the body of the Complaint those charged with violating the Federal Trade Act are referred to as "respondents". The answer does not designate the "respondents" answering but states as follows: "Now comes each and all the respondents *heretofore served* with copies of the complaint herein, and for answer to the complaint of the Commission herein, admit, deny and aver as follows * * *." (Italics ours) Whether or not this appearance can be construed as appearance for all "respondents" need not be decided. [1]

The Counsel appearing for an undisclosed number of respondents by filing the answer executed an "Affidavit in Support of Motion Before Federal Trade Commission" and therein states "That he is an attorney at law, a member of the State Bar of the State of California, and is the attorney for Respondents in the proceeding pending before the Federal Trade Commission, and entitled 'In the Matter of California Lumbermen's Council, Docket No. 2898', that he has been the attorney of record in said proceeding Docket No. 2898 continuously since the inception of said proceedings and the filing of the answer therein; * * *".

During the taking of evidence in the trial before the examiner, the following colloquy took place between Counsel and the Examiner:

"Trial Examiner Diggs. Mr. Doyle, I understand that you are counsel for Mr. LeMaster, is that correct?

"Mr. Doyle. I am appearing for all respondents."

---

[1] Subsequent to the oral hearing in this court, certificate has been filed as follows. Appended to this certificate is a list of the names of those against whom the order is directed with the exception of Ralph P. Duncan and Charles G. Bird:

"I, Joe L. Evins, Acting Secretary of the Federal Trade Commission, and official custodian of its records, do hereby certify that attached is a full, true, and complete copy of return receipt cards showing service of complaint in Docket 2898, in the matter of California Lumbermen's Council, et al., on the following respondents:

| Registry No. | Respondent served |
|---|---|
| 370005 | California Lumbermen's Council |
| 370006 | George N. Ley |
| 370008 | George C. Burnett (Cal. Lumbermen's Council |
| 370010 | J. H. Kirk (Cal. Lumbermen's Council) |
| 370011 | Warren Tillson |
| 370012 | S. P. Ross |
| 370013 | I. E. Horton |
| 370014 | A. S. Hatch |
| 370015 | E. S. McBride (Cal. Lumbermen's Council) |
| 370016 | James Tully |
| 370017 | Coast Counties Lumbermen's Club |
| 370018 | Wiley Masengill |
| 370019 | W. H. Enlow |
| 370020 | J. H. Kirk (Coast Counties Lumbermen's Club) |
| 370021 | C. S. Tripler |
| 370022 | Central Valley Lumbermen's Club |
| 370023 | C. C. Moorhead |
| 370024 | W. O. Mashek |
| 370026 | Thomas L. Gardner |
| 370027 | Northern Counties Lumbermen's Club |
| 370028 | George K. Adams |
| 370029 | E. S. McBride (Northern Counties Lumbermen's Club) |
| 370030 | C. D. LeMaster |
| 370031 | Peninsula Lumbermen's Club |
| 370032 | San Joaquin Lumbermen's Club |
| 370033 | George C. Burnett (San Joaquin Lumbermen's Club) |
| 370034 | F. Dean Prescott |
| 370036 | Bernard B. Barber |

The receipt cards referred to, however, do not show that the complaint was in the envelope receipted for.

In both of these instances the Counsel has referred to the parties he represents as "respondents" rather than in the limited manner in which the answer was drawn. Up to the time of the above colloquy the case appears to have been proceeding under the assumption that Mr. Doyle was representing all respondents, and therefore the case was conducted under the same assumption.

Now after the trial has been completed and litigation has proceeded through several hearings in this court, Counsel for the first time reveals his intention of relying upon the strictest limitation upon his appearance, i. e., that he appears only for those respondents whom the Commission can prove were legally served. He appeared before the Commission and this court ostensibly representing some one or more of the respondents. It is the right of the Examiner to know whom counsel represents and not alone those who may come under some uncertain category. When the Examiner attempts to make certain whom counsel represents he answers, "All respondents". We are loath to believe that counsel whom this court knows as an able lawyer in good standing at the California State Bar and the Bar of the Federal Courts means to rely upon the equivocal position these facts suggest. We think he represented that he appeared for all respondents and that it was his duty to inform the Examiner and this Court at the earliest time practicable, whom he appeared for if he meant to appear for less than all respondents. In the circumstances, we hold that Counsel represented that he appeared generally for all respondents.

The second point raised is that the cease and desist order is invalid and void because petitioners were denied and deprived of a fair trial. Several separate considerations in support of the general statement are made, the first of which is that Counsel for respondents was required to put on his case prior to the closing of the case for the government; and upon his refusal to further proceed the trial examiner declared the case of respondents closed and proceeded to the hearing of the government's case. There is no authority cited by petitioner to the effect that a change in the order of presentation of a case deprives either side of a fair hearing and constitutes a ground for reversible error. While it is customary for the defendant's case to be presented after that of the plaintiff's, there is nothing to prevent the taking of testimony out of such regular order where there is reason therefor. Petitioners' point is based upon the following events, the record reading:

"Trial examiner Diggs: This witness, whose testimony, you say, will have reference to the testimony of the two Respondent witnesses who did not appear, will it be possible to put that testimony on before these Respondent witnesses testify?

"Mr. Murphy: (for government) No. Possible, but not feasible.

"Trial examiner Diggs: In view of the fact that the inability of counsel for the Commission to actually announce the close of his case is due to the failure of certain Respondents to appear in response to subpoenas, I rule that Respondent will begin the taking of its testimony at 10:00 o'clock a. m., * * * and that when the attorney for the Commission shall have concluded the introduction of the testimony indicated by him, that at that time, the Respondent will be offered an opportunity to rebut the testimony so offered.

"Mr. Doyle: We object and protest against the ruling of the Examiner compelling us to proceed with the presentation of our defense prior to the time the Commission's case is closed. We claim and insist that to compel us to do so constitutes a denial to us of due process; that it is not in accordance with the rules of the Commission's established practice and customs."

On the next day the petitioner was called upon to present his case, and the record shows what transpired:

"Mr. Doyle: I again say, Mr. Examiner, we decline to proceed any further with the presentation of the defense in this matter, until the government's case is in and closed, and an announcement to that effect made.

"Trial Examiner Diggs: Then I announce that the taking of testimony in the Respondent's case is closed."

Later in the proceedings of the case, and at the time of the closing of the case for the government, the following took place:

"Mr. Sadler: Mr. Examiner, the Government will now rest its case.

"Examiner Vicini: Well, you haven't anything further then?

"Mr. Sadler: No; the Government now rests its case.

"Examiner Vicini: (addressing petitioners) You haven't anything?

"Mr. Doyle: There is an order here barring us from putting in testimony.

"Examiner Vicini: Yes; I understood there was.

"Mr. Doyle: So under that order, we are not permitted to put in any testimony.

"Examiner Vicini: Mr. Diggs made that order and presented it on June 7th, I believe.

"Mr. Doyle: I don't recall the date; it was discussed a number of times.

"Examiner Vicini: June the 7th. Well, if there is no other testimony to be offered, the evidence being complete, it is ordered that the formal order of closing the case be referred to the Chief Trial Examiner. That will be the order, that we stand adjourned."

The action of the Examiner was correct and reasonable. It may be added that in any event there does not seem to have been any prejudice to petitioner.

■ Other claimed instances of an unfair trial relate to rulings upon the admission of evidence which resulted in the rejection or the striking from the record of evidence admitted. Petitioner claims the ruling of the Commission should be nullified because of such rulings by the Examiner. But petitioner should have applied to the court for leave to produce the evidence deemed to have been wrongly kept out of the record. The Statute provides: "If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the commission, the court may order such additional evidence to be taken before the commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper." 15 U.S.C.A. § 45. In a proper case where the evidence sought to be adduced is material the order will be granted. See Consolidated Edison Co. of New York v. National Labor Relations Board, Dec. 5, 1938, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126, which construes a similar provision in the National Labor Relations Act, 29 U.S.C.A. § 160(e).

The other asserted errors under this general point of unfair trial could have been passed upon by appropriate petition as provided for and construed above and suggested in the earlier opinion reported in 103 F.2d 304. Here, however, the counsel pressing this point of error has not even attempted to show the materiality of the excluded portions or wherein petitioners have been prejudiced.

■ The next point relied upon is that after the hearings below were closed, the Commission denied respondents' motion for an order requiring the official reporter to prepare and file with the Commission, a true, full and correct transcript of the entire record in the proceeding including all the evidence taken therein. This point is sufficiently answered by the comment just concluded.

■ The point is made by the appellant that the Commission is without power to appoint an examiner to hear evidence and rule on evidentiary points thus making a record of the "testimony". The wording of the act itself precludes any such construction. The act states [15 U.S.C.A. § 45]: "* * * The person, partnership, or corporation so complained of shall have the right to appear at the place and time so fixed and show cause why an order should not be entered by the commission requiring such person, partnership, or corporation to cease and desist from the violation of the law so charged in said complaint. * * * The testimony in any such proceeding shall be reduced to writing and filed in the office of the commission. If upon such hearing the commission shall be of the opinion that the method of competition in question is prohibited by this subdivision of this chapter, it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served * * *." There is no requirement in the act that the hearing be before the entire board. The requirement is only that testimony be taken in a hearing provided for by the board and when reduced to writing, filed in the office of the Commission. The report made by the Commission is clearly made upon the basis of the written facts as so filed and that this is the method intended is shown from the treatment in the statute of these two subjects; i. e., first the filing of the written testimony as produced at the hearing, and then the report based upon such hearing (as shown by the filed transcript of the trial.) The act provides specifically for Examiners. 15 U.S.C.A. § 42.

■ The next claimed error is that appellants were prohibited from cross ex-

amining one of the government's witnesses as to the N. I. R. A. codes. The fact is that this witness testified to acts of trade restriction by the clubs or associations, termed respondents, from 1929 until the present time. The period of 1929 and 1930 was inquired into for the purpose of showing the manner in which the respondents operated, as well as to show restrictive acts. The witness was particularly fitted to testify as to the period for at that time he was an officer of one of the organizations and had knowledge of the others as well. The acts constituting restraint of trade in violation of law were of a continuing type and continued from the time of this witness's membership in the organization to the date of the trial. The cross examination as to the N. I. R. A. codes was of course limited to the period from Oct. 15, 1933 to May 1, 1934, for that was the period in which the codes were in effect. Schechter Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Schechter v. United States, 295 U.S. 723, 55 S.Ct. 651, 79 L.Ed. 1676. We agree with counsel for respondents that the cross examination at this point was unnecessarily restricted. We think, however, that no harm was done.

The purpose of a cease and desist order is not to punish for past acts, but to prevent the occurrence or the threatened continuance of illegal acts. Even though such codes could be relied upon as a defense to the period over which they were in force, which we do not decide, they could be no defense to acts violating the law after they had been declared a nullity, and the evidence goes that far. It is to the continuation of acts shown to have been practiced and threatened that this order is directed.

The next point made by appellant is that the cease and desist order of the Commission should be dissolved for the reason that certain portions thereof are in excess of the powers of the Commission and that various acts prohibited by said order do not constitute unfair methods of competition in commerce.[2] We set out provisions of the cease and desist order in the margin.[3] Under this point it is claimed that the order is vague, indefinite and obscure to an extent of invalidity. The portion objected to is as follows: "It is or-

[2] 15 U.S.C.A. § 45.
"Power to prohibit. The commission is empowered and directed to prevent persons, partnerships, or corporations, except banks, and common carriers subject to the Acts to regulate commerce, from using unfair methods of competition in commerce." See amendment of June 23, 1938, 15 U.S.C.A. § 45. Change of no importance here.

That these acts have been held to constitute unfair competition within the meaning of the act has been established by the following cases among others:

Agreement between dealers not to trade with customer—Western Sugar Refinery Co. v. Fed. Trade Comm., 9 Cir., 1921, 275 F. 725.

Fixing resale prices—Moir v. Fed. Trade Comm., 1 Cir., 1926, 12 F.2d 22; Fed. Trade Comm. v. Beech-Nut Packing Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307, 19 A.L.R. 882; Q. R. S. Music Co. v. Fed. Trade Comm., 7 Cir., 1926, 12 F. 2d 730.

Conspiracies by wholesalers to prevent sales by manufacturers to competitors—Wholesale Grocers' Ass'n v. Fed. Trade Comm., 5 Cir., 1922, 277 F. 657.

Use by wholesalers of price lists fixed by agreement in selling outside state—Fed. Trade Comm. v. Pacific States Paper Trade Ass'n, 1927, 273 U.S. 52, 47 S. Ct. 255, 71 L.Ed. 534.

Boycott—Chamber of Commerce of Minneapolis v. Fed. Trade Comm., 8 Cir., 1926, 13 F.2d 673.

[3] "(1) Preparing and publishing rosters or lists containing the names of respondent dealer members of respondent organizations and distributing the same among manufacturers, producers and wholesalers, or their representatives, of lumber and building materials, for the purpose, or with the effect of, indicating that the specified persons or concerns are entitled to buy direct from said manufacturers, producers, and wholesalers, or that other persons or concerns, not included therein, are not so entitled.

(2) Soliciting, accepting, or acting upon, information as to sales, proposed sales, or contracts of sale, by manufacturers, producers, and wholesalers, of lumber and building materials to non-dealer members of respondent organizations or other purchasers, for the purpose of preventing further dealing between such buyers and the said manufacturers, producers, and wholesalers.

(3) Using boycott, threats of boycott, either with or without other coercive methods, to persuade, induce, or compel manufacturers, producers, and wholesalers to refrain from selling lumber and building materials to non-member dealers of respondent organizations or other purchasers, or to refrain from so

dered that Respondents (naming petitioners) in connection with the purchase and the offering for sale, sale and distribution of lumber and building materials, in interstate commerce do forthwith cease and desist" etc. The objection by petitioner is best shown by quoting from his brief, p. 49:

"It will be observed that the language of the injunction is in the conjunctive—that is, that the petitioners are ordered to cease and desist 'in connection with the purchase *and* the offering for sale', etc. etc.

"Assuming that petitioners did the forbidden acts in connection with or in relation to the purchase only. Would that constitute a violation of the order and leave them subject to a penalty?

"Or assume that they did *not* do any of the forbidden acts in connection with the purchase of lumber, but *did* do the forbidden acts in connection with the sale of lumber. Would that constitute a violation of the order and leave petitioners subject to punishment?"

The Commission and this court are interested in the substance of the order, and when the order is read as a complete article there is no question but that the acts prohibited are prohibited in the case of purchase and sale or the purchase or sale, separately or together.

It is also argued that the order prohibits the petitioners from imposing upon manufacturers "unfair, discriminatory, or pro-

hibitive terms and conditions". The fact is that this reference to a portion of paragraph three of the order must be considered in conjunction with the whole of said paragraph and the meaning is not questionable when it is so read. This same type of objection made to paragraphs six and eight of the order wherein the word "unlawfully" is claimed to be equivocal is answered by the same reasoning, that is, that the fixing and determining of quotas and exacting penalties are unlawful and prohibited when affecting interstate commerce.

It is stated by appellant that some of the acts prohibited are not unlawful and one of such is claimed to be the prohibited publishing of lists of members with the effect of indicating such concerns may be dealt with or that other persons should not be dealt with. That this is a proper prohibition was settled in the case of Eastern States Lumber Ass'n v. United States, 234 U.S. 600, 612, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A.1915A, 788, and the reasons there given apply equally here.

Further it is contended that the restrictions of the order are restraints upon intrastate commerce and not limited to interstate commerce. Each of the provisions of the order are necessarily limited to interstate commerce by the preliminary provision of the order which states: "in connection with the purchase and the offering for sale, sale, and distribution of lumber

selling, except on unfair, discriminatory, or prohibitive terms and conditions fixed by respondents.

(4) Representing, directly or indirectly, to manufacturers, producers, and wholesalers that the members of the respondent organizations would withhold or withdraw their patronage if said manufacturers, producers, and wholesalers sold to competing dealers in lumber and building materials, or to others whose names were not listed on the respondents' rosters.

(5) Fixing or establishing uniform prices at which members of respondent organizations should sell lumber or building materials in particular trade areas.

(6) Fixing or determining the quotas of business in the sale and distribution of lumber and building materials which manufacturers, producers, wholesalers, and dealer members may do in particular trade areas which, thereby, unlawfully restricts or hinders the sale and distribution of lumber and building materials in interstate commerce.

(7) Demanding or exacting penalties or commissions from manufacturers, producers, and wholesalers on sales of lumber and building materials made by said manufacturers, producers, and wholesalers to purchasers other than the members of respondent organizations.

(8) Demanding or exacting penalties or commissions from dealer members, or other dealers, on sales of lumber and building materials, made by said dealer members or other dealers, in trade areas where other dealer members have their places of business which, thereby, unlawfully restricts or hinders the sale of lumber and building materials in interstate commerce.

(9) Holding meetings to devise means for making effective the aforesaid programs and policies, or similar programs and policies.

(10) Employing other cooperative or coercive acts and methods in promoting and carrying out the aforesaid programs and policies, or similar programs and policies."

and building materials, in interstate commerce, do forthwith cease and desist," etc.

The order of the Commission is proper and relief under this petition is denied.

HANEY, Circuit Judge, concurs in the result.