# NATIONAL LABOR RELATIONS BOARD v. AMERICAN POTASH & CHEMICAL CORPORATION.

## No. 8681.

Circuit Court of Appeals, Ninth Circuit.

March 31, 1941.

Charles Fahy, Gen. Counsel, National Labor Relations Board, Robert B. Watts, Associate Gen. Counsel, Malcolm F. Halliday, Asst. Gen. Counsel, Richard A. Perkins, A. Norman Somers, and Bertram Edises, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

Gibson, Dunn & Crutcher, Ira C. Powers, and J. Stuart Neary, all of Los Angeles, Cal., for respondent.

John K. Hagopian, of San Francisco, Cal., for intervener.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This proceeding arises from a report of the American Potash and Chemical Corporation, hereafter called Potash, claiming to show that it has purged itself of the contempt we held it had committed in our decision in National Labor Relations Board v. American Potash & Chemical Corporation, 9 Cir., reported in 113 F.2d 232, 236, 129 A. L.R. 874, and praying that it be deemed purged of that contempt.

The report shows compliance by Potash with our order of reinstatement of its discharged employees. It also shows the payments to them of all but $4,044.94 of their back wages. This sum Potash claims it need not pay because an equal amount was paid by Potash to the attorney for the employees for his services to them in the negotiations for the contract between them and Potash. Under that contract the men were paid all their back pay to the time of negotiating the contract, plus an additional sum for giving up their right of reinstatement and a general release of all Potash's liability. The payment of the attorney's fee was a part of that agreement and an additional consideration to the men for their yielding of their right of reinstatement.

We have held that the agreement of the men to yield their right to reinstatement is contrary to the public interest in the protecting of the men's right to organize and bargain collectively. 113 F.2d 235. It is strongly arguable, but unnecessary to decide, that because of the illegality of the agreement Potash can have no claim upon it here or elsewhere.

The Board contends that since all of the back pay due to the date of the contract was paid in accordance with the terms of the contract, the payment of the attorney's fee could not then have been or intended by the parties to be a payment of any back pay. It also contends that since the contract, with the release of all demands against Potash, contemplated that no more pay was due the men, the payment of the attorney's fee could not have been intended in lieu of any future accrual of the men's wages. In this we are in accord with the Board.

The contention of Potash that payment of the attorney's fee for negotiating the illegal contract should diminish the amount of wages accruing after the full payment of back pay to the date of the contract necessarily rests on the proposition that (assuming the illegality of the contract does not prevent such a claim) the payment of the attorney's fee is a set-off to the men's claim for such future accruals.

 We are of the opinion that it in no way effectuates the purpose of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., to entertain such a separate controversy between the men and the company in a proceeding primarily one of public concern in the prevention of such unfair labor practices as those held to have been committed by Potash. Nor do we have the jurisdiction over the employees, the parties defendant in the separate cause of action constituting the set-off. Amalgamated Utility Workers (C. I. O.) v. Consolidated Edison Co. of New York, 309 U.S. 261, 268, 269, 60 S.Ct. 561, 84 L.Ed. 738.

We therefore hold that the report of Potash fails to show its compliance with our requirement to purge itself of contempt, and that Potash be deemed continuing in contempt until it pay to the men an additional amount equal to the attorney's fee.

Petition to be purged of contempt is denied.