NATIONAL LABOR RELATIONS BOARD
v. SUNSHINE MINING CO.
No. 9162.

Circuit Court of Appeals, Ninth Circuit.
Feb. 5, 1942.

758

HANEY, Circuit Judge, dissenting.

Robert B. Watts, Gen. Counsel, National Labor Relations Board, and Malcolm F. Halliday, Asst. Gen. Counsel, both of Washington, D. C., and Charles M. Brooks, Atty., National Labor Relations Board, of Seattle, Wash., for petitioner.

Joseph C. Cheney and Cheney & Hutcheson, all of Yakima, Wash., for respondent Sunshine Mining Co.

Chas. E. Horning and H. J. Hull, both of Wallace, Idaho, for respondent Eunice Jones Harms and another.

Lester S. Harrison and Frank Griffin, both of Kellogg, Idaho, for respondents Higgins & Miller.

F. C. Keane and E. F. McCann, both of Wallace, Idaho, for respondent Tillie Magnuson.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The National Labor Relations Board has petitioned for an order restraining certain persons from instituting, prosecuting, or maintaining any action or proceeding or invoking any process to carry into effect certain writs and injunctive orders issuing from the courts of the state of Idaho in actions by them against various named employees of Sunshine Mining Company to whom back pay is required to be paid by that Company under the terms of the decree of this court, the intent or purport of which proceedings is to prevent or restrain Sunshine from paying directly to the named employees the full amount of such back pay as may be payable to them under our decree and to compel Sunshine to pay the whole or a part of the same to persons other than these employees toward satisfaction of the respective claims or demands of the named persons. An order to show cause was issued together with a temporary restraining order. The question now before us is whether the temporary restraint should be made permanent.

The petition is ancillary to the main proceeding in which this court's decree of enforcement was rendered. The petition states that the restraining order is sought in the interest of protecting the exclusive jurisdiction of this court over the subject matter of its decree and of achieving the effectuation of the decree in accordance with its terms. The Board claims that the authority to issue such restraining order is vested in this court under § 262 of the Judicial Code, 28 U.S.C.A. § 377, empowering the federal courts to issue such writs as may be necessary for the exercise of their respective jurisdictions. Sunshine, by its answer and cross claim in effect supports the Board's petition and asks that its own duty in the premises be declared. A number of the plaintiffs in the state court suits have appeared in response to the order to show cause and have interposed answers resisting the prayer of the petition.

In June, 1938, the Board, in a proceeding against the Sunshine Company, issued its decision in which Sunshine was found to have engaged in unfair labor practices, and ordered that Sunshine cease and desist therefrom and take certain affirmative steps to effectuate the policies of the Act. April 3, 1940 this court entered its decree enforcing the Board's order, with modifications not here pertinent. 9 Cir., 110 F. 2d 780. Petition of Sunshine for certiorari was denied January 13, 1941, 312 U.S. 678, 61 S.Ct. 447, 85 L.Ed. 1118. The decree orders that Sunshine "take the following affirmative action which the Board finds will effectuate the policies of the Act", namely:

"(a) Offer to all the employees who went on strike on August 2, 1937, immediate and full reinstatement to their former or substantially equivalent positions, without prejudice to their seniority and other rights and privileges and effect such reinstatement in the following manner: * * *

"(b) Make whole the employees ordered to be offered reinstatement for any loss of pay they may have suffered by reason of the respondent's discrimination, by payment to them of a sum equal to that which each would normally have earned as wages during the period from August 18, 1937, the date of the respondent's discrimination against them, to the date of the offer of employment or placement upon the preferential list required by paragraph (a) above, less the amount each has earned during that period."

As the investigations necessary to compliance with this phase of the decree are incomplete, the amounts payable are as yet unliquidated.

Most of the suits in the state courts are by creditors who seek money judgments against the employees in question.[1] In

---

[1] Some of the actions are being prosecuted in the state district court for the county in which Sunshine's operations are conducted, others are pending in justice's courts for that county.

these actions writs of attachment have been issued and process of garnishment served on Sunshine.[2] There are three suits in the nature of divorce actions. In one of these the divorced wife of an employee seeks to quiet her title to one-half the moneys payable by Sunshine to the former husband. Sunshine was restrained until further order from paying over to the employee or to any other person more than one-half the moneys which might be due the employee. In another case a wife has sued for divorce and has obtained an order restraining Sunshine from paying over to the employee husband or to any other person any of the back pay which may be payable to him. In the third suit of this type the decree of divorce awards to the wife, as her sole and separate property, the claim of the employee husband against Sunshine for the back wages awarded, and Sunshine has been served with a certified copy of the decree. Altogether, 23 of the employees are affected by these various suits, and in all cases the writs or decrees operative against or directed toward Sunshine have application solely to the money payable by Sunshine under the terms of our decree.

The net result of these various writs, decrees, and injunctive orders is that Sunshine is prevented from complying with the decree of this court in accordance with its terms. Stating the situation from the standpoint of the employer, Sunshine is or may become subject to orders or judgments by which it may eventually be compelled to pay the awards both to the named employees and to third persons or find itself in contempt for failing to do so.

█ We do not here concern ourselves with the mere convenience of litigants or with possible hardships that may be visited upon the employer. If the plight of Sunshine alone were to be taken into account, it is rather clear that it should be left to litigate the matter in the state courts. While, generally speaking, the construction and application of state laws pertaining to garnishment and to process analogous thereto are matters for local determination, compare Huron Holding Corp. v. Lincoln Mine Co., 312 U.S. 183, 61 S.Ct. 513, 85 L.Ed. 725, yet questions concerning the nature of these awards and whether, in any event, unexecuted awards of back pay made under the terms of the Act are subject to state process, are federal questions determinable ultimately by the Supreme Court on review of the state proceedings. Cf. Toucey v. New York Life Ins. Co., 62 S.Ct. 139, 86 L.Ed. ——.

But the petition of the Board[3] presents a problem of a different sort, one which must be considered in the light of the policy and terms of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. The Act looks toward expeditious performance of the decree, see § 10(i). Moreover this court must of necessity retain full control over the subject matter until final compliance. If, pending compliance, third persons were permitted to obtain fixed rights against the employer growing out of the back pay awards, the power of the court effectively to enforce its decree, either as originally entered or as modified as circumstances

---

[2] Following is a summary of the pertinent provisions of the attachment statutes as contained in ch. 5, title 6, Idaho Code 1932: A plaintiff may have the property of the defendant attached as security for the satisfaction of any judgment that may be recovered, and all debts owing such defendant, not exempt from execution, are subject to attachment. "Debts and credits" must be attached by leaving with the person owing the same a copy of the writ and a notice that such credits or debts are attached pursuant thereto. A person owing any debt at the time of the service of garnishment is made liable to the plaintiff for the amount of such debt unless the debt is paid to the officer, until the attachment is discharged or any judgment recovered is satisfied. In garnishment proceedings the garnishee is required to disclose whether he owes the defendant any money, and,

if so, the amount, on what account, and when it will become due. If the garnishee admits an indebtedness, or that he has money of the defendant in his hands or under his control, and fails to turn the same over to the officer, the plaintiff may move the court out of which the writ issued for judgment against the garnishee for the amount of such admitted debt, or for the delivery to the officer of the money of the defendant in his hands, to an amount sufficient to satisfy the plaintiff's claim. Provision is made for the trial of the issue if the garnishee denies that he is indebted, and an appropriate judgment may be rendered upon such trial.

[3] The Board is not a party to the proceedings in the state courts, and its right to intervene or to be heard there is at least doubtful. Consult § 5-322, Idaho Code, and annotations.

might require,[4] would be subject to partial or complete frustration. The administration of the decree, or the time, manner or sufficiency of the compliance, are matters which cannot be made dependent upon the consent of the employees or of third persons, or upon the uncertain outcome of tedious proceedings in other courts.

■ It is settled that the Act creates no private right,[5] and that there is no authority anywhere save in the Board itself to inaugurate proceedings for the enforcement of the Board's order or of the decree entered upon its petition.[6] The award of back pay is not a private judgment or a chose in action belonging to the employee, and he has no property right in the award pending his actual receipt of it.[7] Until that time the subject matter remains exclusively under the administrative authority of the Board and in control of the court, and outside interference of any sort would tend inevitably to shackle or impede the free exercise of their powers. Third persons may, of course, as between themselves and the employee, freely litigate the question whether the amount of the award, when paid over pursuant to the decree, is their property or that of the employee, United States v. Klein, 303 U.S. 276, 58 S. Ct. 536, 82 L.Ed. 840, and they may, to the extent permitted by state law, subject the money to attachment after its receipt by the employee; but they cannot, by resort to judicial process, be permitted to command the payment of the awards to others than those whom the decree has designated as the appropriate recipients.

■ The state litigants contend, however that there is no public policy inexorably demanding the payment of the back pay to the employees rather than to their estranged wives or to creditors, and indeed that the decree is not in any essential respect subverted by the process subjecting the inchoate rights of the employees to the legitimate claims of third persons. But the Board thought otherwise. It believed that an appropriate corrective of the unfair labor practices lay in the payment of back pay to the individuals who were the immediate victims of those practices. Obviously it is still of that opinion; and, while it now appears that there were collateral casualties in the train of social and economic ills set in motion by the strike, we cannot say that the Board's conclusion as to what should be done at this juncture is without a rational basis. It is the Board's order which the decree enforces, Amalgamated Utility Workers v. Consolidated Edison Co., supra, 309 U.S. 269, 60 S.Ct. 561, 84 L.Ed. 738, and the statutory scheme commits to the Board the responsibility of determining in each case what affirmative action will best serve to effectuate the policies of the Act.[8] While we undoubtedly have the power, on application of the Board, to modify or even dispense with the back pay requirement, the application before us looks to the strict enforcement of the requirement as it is written. We take it that a prime purpose of the Board's petition is to vindicate the principle of non-interference, and we agree that insistence upon that principle is both salutary and necessary. In what circumstances the Board should lend a sympathetic ear to third party pleas of this sort is a matter which rests in the judgment and discretion of the public agency to which Congress has committed the administration of the Act. Cf. N.L.R.B. v. Virginia Electric &

---

[4] Compare N.L.R.B. v. Carlisle Lumber Co., 9 Cir., 108 F.2d 188. In that case the employer claimed to be financially unable to pay the awards. Ultimately a stipulation between the Board and the employer was approved by this court, by the terms of which the employer was permitted to pay the awards in installments over a long period out of its production. One of the provisions of the stipulation was that the employer should have and allow full credit on any debt owing it by an employee entitled to back pay. The amount of such credits was in the neighborhood of $9,000. Before this stipulation was made the Board had seriously considered a proposal by the employer that it be permitted to turn over certain property in lieu of money.

[5] National Licorice Co. v. N.L.R.B., 309 U.S. 350, 362, 60 S.Ct. 569, 84 L. Ed. 799; N.L.R.B. v. American Potash & Chemical Corp., 9 Cir., 113 F.2d 232, 235, 129 A.L.R. 874; N.L.R.B. v. Colten, 6 Cir., 105 F.2d 179, 182.

[6] Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738.

[7] Agwilines, Inc., v. N.L.R.B., 5 Cir., 87 F.2d 146.

[8] N.L.R.B. v. Pennsylvania Greyhound Lines, Inc., et al., 303 U.S. 261, 265, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; N.L.R.B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 348, 58 S.Ct. 904, 82 L.Ed. 1381; N.L.R.B. v. Link-Belt Co., 311 U.S. 584, 600, 61 S.Ct. 358, 85 L. Ed. 368.

Power Co., 62 S.Ct. 344, 86 L.Ed. ——, decided Dec. 22, 1941.

It remains to inquire whether § 265 of the Judicial Code, 28 U.S.C.A. § 379 [9] is an obstacle in the way of our granting the injunction. We think it is not. Nor do we regard the holding in Toucey v. New York Life Ins. Co., supra, as determinative of the question before us. This is not a re-litigation case. In a sense the proceeding may be assimilated to the res cases. The subject matter of the awards is certainly a potential if not an actual res.

However that may be, we do not have here the typical situation exemplified in the Toucey case or in Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077, where the state and federal courts have concurrent jurisdiction over the controversy. The proceeding is purely statutory and the jurisdiction of the federal court is exclusive.[10] As said in Amalgamated Workers v. Consol. Edison Co., supra, 309 U.S. page 264, 60 S.Ct. page 563, 84 L.Ed. 738, "Congress was entitled to determine what remedy it would provide, the way that remedy should be sought, the extent to which it should be afforded, and the means by which it should be made effective." By § 10(c) the Board, upon a finding that any person has engaged in unfair labor practices, is required to "issue and cause to be served on such person an order requiring such person to cease and desist * * * and to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act [chapter]." If, as must be conceded, the true intent and purpose of the present order comprehends payment of back pay directly to the striking employees themselves, it is not for a state court to say that the order was wrong, nor has that court, by the use of its injunctive or attachment processes, rightful authority to compel the employer to disobey the order. As in removal cases and in proceedings in the district courts for limitation of shipowners' liability, Toucey v. New York Life Ins. Co., supra, the authority to enjoin proceedings inimical to the free exercise

of the court's exclusive jurisdiction is implicit in the terms of the law. See provision quoted in note 10. In cases of the type mentioned the federal courts have freely resorted to the implied power to enjoin. We see strong reasons for believing that the power should be exercised here and no good reason why it should not. The power to punish for contempt is not an adequate safeguard in any case. Certainly we cannot know that it would be. When the power is invoked it may prove futile, even as a purely punitive measure, as the employer by his enforced compliance with the state process may well have been stripped of the means of complying with our decree.

It is ordered that a writ of injunction be issued directed toward the persons named in the petition of the Board, permanently restraining all further proceedings by them against the Sunshine Mining Co. as prayed for in said petition.

HANEY, Circuit Judge (dissenting).

The majority, confronted with the limitation of its powers by Toucey v. New York Life Insurance Company, November 17, 1941, 62 S.Ct. 139, 86 L.Ed. ——, find power to enjoin the state court, but fall short of saying expressly what authorizes such exertion of power by this court.

On June 29, 1938, the National Labor Relations Board issued an order against Sunshine Mining Company, a corporation, hereafter referred to as respondent, requiring it to reinstate with back pay certain of its employees. 7 N.L.R.B. 1252. On April 3, 1940, this court entered its decree enforcing the Board's order (9 Cir., 110 F.2d 780), and thereafter the decree became final after denial by the Supreme Court of the United States of respondent's petition for certiorari. 312 U.S. 678, 61 S.Ct. 447, 85 L.Ed. 1118; 312 U.S. 713, 61 S.Ct. 619, 85 L.Ed. 1144.

A district court in Idaho, which is a court of general jurisdiction, entered a decree of divorce in an action against one of the employees (Jones), and decreed the back pay award to him to be the sole and separate property of his former wife. The

[9] "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

[10] The Act provides (§ 10(e) that "the jurisdiction of the court shall be exclusive and its judgment and decree shall be final", subject only to review by the Supreme Court.

same state court entered a decree of divorce in an action against another employee (Stralovich), and decreed that the former wife owned one-half of all community property. The former wife then brought an action in the same state court to quiet her title to one-half of the former husband's back pay award, and the state court restrained respondent from paying such one-half interest in the award while such action was pending. The same state court, in an action for divorce brought against another employee (McLeland), restrained respondent from paying the back pay award due such employee while such action was pending.

Twenty-seven actions were filed against employees to whom back pay awards were made, to recover on debts, and in each of them a writ of attachment was issued whereby levy on the back pay awards was sought. One of the actions was brought in the state court above mentioned, and the remainder were brought in justice's courts. Judgment was rendered against an employee in still another action brought to recover on a debt in a justice's court, and the back pay award was sought to be seized on execution issued on the judgment. Actually only 23 employees are involved, because there are two or more actions pending against a few of the employees.

On November 24, 1941, the Board filed a petition alleging the above facts and praying: (1) that an order issue requiring respondent and all plaintiffs in the above mentioned actions to appear and show cause why they should not be restrained from preventing them, in general, enforcing any claim against or preventing payment to the respective employees of, the back pay awards; (2) that all plaintiffs be permanently restrained in the manner specified in (1); and (3) that pending return of the order a stay issue restraining the plaintiffs in the manner specified in (1). On the same day this court issued the order as prayed for in paragraphs (1) and (3).

Respondent filed an answer and cross petition for instructions as to whom and in what manner the back pay awards were to be paid, for a declaratory judgment regarding similar instances in the future, and for an injunction against the Board and the plaintiffs above mentioned restraining them from requiring or attempting to require respondent to make payment of the back pay awards in any way inconsistent with the order or decree of this court. It is suggested in the answer that some of the employees had made assignments of their back pay awards.

### The Injunction.

The sole relief prayed for by the Board is an injunction restraining proceedings in the state court. May that relief be granted?

First. Judicial Code § 265, 28 U.S.C.A. § 379, provides:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy".

As I understand the Toucey case, it held that we could not enjoin proceedings in a state court, except in six instances: (1) bankruptcy proceedings; (2) removal of actions; (3) limitation of shipowners' liability; (4) interpleader; (5) Frazier-Lemke Act; and (6) where a federal court has first acquired jurisdiction of a res.

It is obvious that the present case does not fall within any of the first five exceptions. Indeed the majority does not suggest to the contrary. Does this case fall within the sixth exception above stated? In other words, did this court by enforcing the Board's order awarding back pay, take into its possession a res? It is argued in the affirmative by the Board, and while the majority does not expressly rest its decision on that ground, it does say: "In a sense the proceeding may be assimilated to the res cases. The subject matter of the awards is certainly a potential if not an actual res." Does the majority mean that this court had taken into its possession a res by acting on the petition for enforcement?

No authority is cited to support the court's suggestion. In fact, the authority is contrary. The Toucey case and Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077, make it clear that if an action is in personam, the federal court may not enjoin proceedings in the state court. There can be little doubt that the proceedings before the Board and before this court on petition for enforcement are in personam. National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 362, 60 S.Ct. 569, 84 L.Ed. 799. If that conclusion were

doubtful, it is conclusively settled by Grannis v. Ordean, 234 U.S. 385, 393, 34 S.Ct. 779, 58 L.Ed. 1363, where it is explained that a proceeding in rem, in a strict sense, is one taken directly against the property, but in a larger and more general sense, it also includes an action between parties where the direct object is to reach and dispose of property owned by them, or of some interest therein. The petition for enforcement was not taken directly against the property of respondent, and its object was not to reach and dispose of any of respondent's property or any interest therein. Finally, such a proceeding, in its nature, does not differ from the proceedings to review orders of the Federal Trade Commission. As to the latter, this court has said they are proceedings in personam. California Lumbermen's Council v. Federal Trade Comm., 9 Cir., 115 F.2d 178, 181.

I believe the Toucey case holds that proceedings in a state court may be enjoined by a federal court if, and only if, the proceeding in the federal court falls within one of the six exceptions mentioned in such case, and that there are no other exceptions. I further believe that it is apparent that the instant proceeding here does not fall within any of the six exceptions, and therefore the issuance of an injunction is and was erroneous.

The majority apparently decide, although not in express words, that they are not prohibited by the Toucey case from engrafting other exceptions on Judicial Code § 265. In this connection, the majority says:

"* * * As in removal cases and in proceedings in the district courts for limitation of shipowners' liability, Toucey v. New York Life Ins. Co., supra, the authority [of this court] to enjoin proceedings inimical to the free exercise of [its] exclusive jurisdiction is implicit in the terms of the law. See provision quoted in note. 10. In cases of the type mentioned the federal courts have freely resorted to the implied power to enjoin. We see strong reasons for believing that the power should be exercised here and no good reason why it should not. * * *"

In the first place I do not understand that the jurisdiction of the federal court in removal cases is "exclusive". I believe that in cases to which the removal statutes apply the jurisdiction of the state and federal courts is concurrent. Secondly, the majority leave the so-called "strong reasons" to speculation and conjecture.

However, the majority merely assert the view mentioned in dicta in Looney v. Eastern Texas R. R. Co., 247 U.S. 214, 221, 38 S.Ct. 460, 462, 62 L.Ed. 1084, where it was said: "The use of the writ of injunction, by federal courts first acquiring jurisdiction over the parties or the subject-matter of a suit, for the purpose of protecting and preserving that jurisdiction until the object of the suit is accomplished and complete justice done between the parties is familiar and long established practice * * *." However sympathetic we may be with the view that we should exercise powers not given us as well as those granted, I think the action of the majority herein is condemned and characterized in the Toucey case [62 S.Ct. 147, 86 L.Ed. ——], as follows: "It denies reality to suggest that litigants have shaped their conduct in reliance upon some loose talk in past decisions in the application of § 265 or, more concretely, upon erroneous implications drawn from Looney v. Eastern Texas R. R. Co., supra * * *."

I believe the Toucey case makes it clear that there are no exceptions, other than the six mentioned, but notwithstanding that conclusion, I will consider the other claimed exceptions.

Second. Judicial Code § 262, 28 U.S.C. A. § 377, provides that federal courts shall have power to issue writs "which may be necessary for the exercise of their respective jurisdictions". The Board's original brief filed before decision of the Toucey case, contended that our power to enjoin the state court proceedings was based on § 262. While the Board has not expressly abandoned that position, it is of course untenable in view of f. n. 4 in the Toucey case where it is said that the "general powers thus given to the federal courts were obviously limited by the subsequent enactment of the specific prohibitory provisions of" § 265. The majority does not uphold the Board's contention in this respect. It is clear that we cannot hold that § 262 is another exception to § 265.

Third. Finally, it is argued, and the majority hold that the National Labor Relations Act authorizes the injunction. The effect of this holding is that such act has made an exception to Judicial Code § 265. As before stated, I think the Toucey case is contrary. However, independently

of that conclusion, I think there is no support for the view of the majority.

Power to issue the injunction must be found to have been expressly given by the act, or it must be implied from the act.

It is not asserted that power to enjoin the state court is expressly given by the act. Section 10(e) and (f) of the act authorize the grant of "temporary relief or restraining order" pending our determination of a petition for enforcement or petition to set aside the Board's order, but not after such determination. The purpose is obvious, for whatever restraint is thought necessary is contained in the Board's order if enforced.

Was the power granted by implication? The majority opinion stated that the problem here is "one which must be considered in the light of the policy and terms of the National Labor Relations Act" and that "the authority [of this court] to enjoin proceedings inimical to the free exercise of [its] exclusive jurisdiction is implicit in the terms of the law. See provision quoted in note 10." Are we to understand that the majority holds that the power to enjoin the state courts is to be implied from the policy of the National Labor Relations Act? Are we to understand that the majority holds that the power to enjoin the state courts is to be implied from the provision quoted in footnote 10 of the opinion? From what provision are we to imply this power? The majority opinion falls short of expressly answering these questions, satisfactorily or otherwise.

The provision quoted in footnote 10 is that "the jurisdiction of the court shall be exclusive and its judgment and decree shall be final", subject only to review by the Supreme Court. The state court proceedings assume such facts, and are based on the theory that in the exercise of our "exclusive" jurisdiction we have made a "final" decree, by which rights are awarded to persons, and that such rights are subject to seizure on process issued out of the state court. The state court proceedings are not "inimical" to the exercise of our exclusive jurisdiction because they neither challenge our exclusive jurisdiction nor contend that our decree is not final.

As to the policy of the act, referred to by the majority, it would seem that the Congressional statement of policy in § 1 is the best guide to such policy, yet the majority make no reference to that provi-

sion. The real basis of the decision is a statement of conjured up fears having no foundation in fact.

The majority first says that "this court must of necessity retain full control over the subject matter until final compliance". It is not pointed out how the state court proceedings in any way affect our "full control over the subject matter". We still have as much control as we have ever had. Prior to the state court proceedings we could punish respondent on contempt proceedings for failure to obey our order, and we may still do so. I fail to see an evaporation of any control whatever.

Next it is asserted: "If, pending compliance, third persons were permitted to obtain fixed rights against the employer growing out of the back pay awards, the power of the court effectively to enforce its decree, either as originally entered or as modified as circumstances might require, would be subject to partial or complete frustration". Again, it is not pointed out, how the state court proceedings frustrate our power, partially, completely, or otherwise or at all. We can as effectively enforce our decree, or any modification thereof, now as we could prior to the commencement of the state court proceedings. We could then punish for contempt, and we can do so now. If respondent chooses to pay in accordance with process of the state court, and such action is erroneous, our decree has not been complied with, and we may punish for contempt. There is no "frustration" of our power whatever.

It is next stated by the majority that until receipt of the award by the employees the subject matter remains exclusively under the administrative authority of the Board and in control of the court, and "outside interference of any sort would tend inevitably to shackle or impede the free exercise of their powers". I am unable to agree with this apocryphal statement. How do the state court proceedings "shackle" either the authority of the Board or the control of this court? How do the state court proceedings "impede the free exercise" of either the authority of the Board or the control of this court? What are the "shackles" and the "impediments"? The answer to these questions are left, by the majority decision, to conjecture and speculation. If, as the majority holds, the state court proceedings are ineffective to accomplish their purpose, the obvious course for the Board and this court is to

proceed as if the state court proceedings had not occurred. As previously stated, the Board and this court still have as much power as existed prior to the state court proceedings.

The majority also intimates that the state court proceedings amount to permitting the question, as to whether our order of enforcement is right or wrong, to be re-tried in the state court. Such conjecture is unfounded. The state court does not seek to try any question concluded by us. The proceedings are founded on the theory that we have conferred rights on employees, and that such rights are subject to seizure in the state court. If the view of the state court is erroneous, certainly it furnishes no occasion for the use of injunctive powers.

It therefore appears that the only interference is with respondent. If it obeys the state court process, it may find it erred and is subject to the ire of this court. Respondent has ample opportunity to protect itself in the state court proceedings, and by appeal therefrom ultimately to the Supreme Court of the United States.

Finally, the majority asserts: "The power to punish for contempt is not an adequate safeguard in any case. Certainly we cannot know that it would be. When the power is invoked it may prove futile, even as a purely punitive measure, as the employer by his enforced compliance with the state process may well have been stripped of the means of complying with our decree." I believe this pronouncement to be based on groundless fears. It is based on at least two unwarranted assumptions finding no support in the record: (1) that respondent will risk the punishment which this court may impose by disobeying our order and declining to defend or take an appeal in the state court proceedings; and (2) that respondent is or will be insolvent.

There is little, if any reason, (certainly none appears in the record), for assuming that respondent will not protect itself from being compelled to pay the awards twice. If respondent was cautious enough to seek protection in this court, it seems likely that it would take similar action in the state courts, if the injunction were refused here. However, I can see no objection to a modification of the order, if requested by the Board, and the insertion of a provision enjoining payment of the awards to anyone but the employees named until further order of this court. Sufficient protection against financial disability would thus be afforded, because respondent, of necessity would be compelled to prosecute the state court proceedings to a conclusion in the Supreme Court of the United States.

Regarding the other assumption of the majority, I do not understand that by making the order awarding back pay, we guarantee that the awards will be paid. If respondent is insolvent, and unless bankruptcy or receivership intervenes, the race of diligence still controls suitors. Furthermore, if we may enjoin the state court proceedings in this case because they lessen the possibility of enforcement of the awards, why cannot we enjoin the proceedings in a state court wherein a third person —a stranger to respondent—seeks to enforce a judgment for personal injuries obtained against respondent. The possibility of payment of the awards is lessened in one case as much as the other, but I think no one would assert that we could enjoin such state court proceedings to insure payment of the back-pay awards prior to the judgment solely on the ground that respondent might not be able to pay the judgment and the awards.

### The Respondent's Answer.

Respondent has asked for a declaration of rights and liabilities under the decree, and for an injunction restraining all parties including the Board from taking any action contrary to the declaration to be made by us. The real relief sought is the injunction. This court has no more power to issue an injunction herein at the request of respondent than on the petition of the Board. Furthermore, our power to comply with respondent's prayer is granted by the act, if at all, only by implication. The question is not argued, the situation here being more a consent proceeding than an adversary one. Under these circumstances, I think no declaration of rights and liabilities should be made.

The Board's petition and respondent's cross-claim should be denied.