## NATIONAL LABOR RELATIONS BOARD v. KILLOREN.
### Nos. 11839, 11875.

Circuit Court of Appeals, Eighth Circuit.

Sept. 3, 1941.

Rehearing Denied Oct. 11, 1941.

VAN VALKENBURGH, Circuit Judge, dissenting.

A. Norman Somers, of Washington, D. C. (Robert B. Watts, Gen. Counsel, and Malcolm F. Halliday, Asst. Gen. Counsel, both of Washington, D. C., on the brief), for appellant.

Harry S. Gleick, of St. Louis, Mo. (Jones, Hocker, Gladney & Grand, and Gleick & Strauss, all of St. Louis, Mo., on the brief), for appellee.

Before WOODROUGH, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

JOHNSEN, Circuit Judge.

The controlling questions are (1) whether a back pay allowance in an order of the National Labor Relations Board, whose enforcement has been directed by the Circuit Court of Appeals, is a provable debt in a subsequent bankruptcy proceeding; (2) if so, whether it is a debt owing to the Board in the sense that the Board is entitled to file and assert a proof of claim therefor; and (3), if it is such a provable debt, owing to the Board, whether it is entitled to a priority under section 64 of the Bankruptcy Act, 52 Stat. 874, 11 U.S.C.A. § 104.

The Hamilton-Brown Shoe Company, on complaint and hearing, was found to have engaged in unfair labor practices under the National Labor Relations Act, 29 U.S. C.A. § 151 et seq., and was ordered by the National Labor Relations Board, among other things, to make whole the employees who had been discriminated against, "by payment to each of them, respectively, of a sum equal to that which each would normally have earned as wages during the period from the date of the discrimination against him to the date of the offer of reinstatement or placement upon the preferential (rehiring) list * * *, less his net earnings during said period." On a petition for review, we affirmed this portion of the Board's order and directed its enforcement. See Hamilton-Brown Shoe Co. v. National Labor Relations Board, 8 Cir., 104 F.2d 49.

After entry of the Board's order, and while the petition for review was pending before this Court, the Company instituted a proceeding for corporate reorganization under Chapter X of the Chandler Act, 11 U.S.C.A. § 501 et seq. Following our affirmance of the Board's order as to reinstatement of employees and back pay allowances, the Company was adjudicated a bankrupt. The Board then filed a proof of claim with the Referee, in the name of the Board, for the back pay allowances, totalling $161,160.17, due 168 employees discriminated against under its order, setting out the name of each and the amount which he was entitled to receive.

On motion of the trustee, the Referee expunged the proof of claim from the record, upon the ground that a back pay allowance under the National Labor Relations Act did not constitute a provable debt or claim in bankruptcy, capable of being asserted by the Board or any one else. His memorandum opinion indicates that he conceived that the sole purpose of the Board's order and its only power under the Act were to prevent the Company "as a going concern from obstructing or again obstructing the flow of interstate commerce", and that, since the Company had gone into bankruptcy, "there is no reason for affirmative remedial action to carry out the purposes of the Act", and "the payment of so-called back pay * * * is not now required by the Act".

On the Board's petition for review, the District Court approved and confirmed the Referee's order, and the Board has appealed.

We think the Referee and the District Court erred.

The validity of the Board's allowance of back pay and the enforcibility thereof were conclusively settled by our order affirming it and directing its enforcement. Such a valid allowance was, under the provisions of the Act, not a punitive but a remedial action. Its purpose was, not by way of penalty against the particular employer, but in furtherance of the policies of the Act, to restore as nearly as possible the status quo which would have existed, if the discriminating wrong had not been committed. National Labor Relations Board v. Remington Rand Co., 2 Cir., 94 F.2d 862, 872. "Making the workers whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces." Phelps Dodge Corporation v. National Labor Relations

Board, 313 U.S. 177, 197, 61 S.Ct. 845, 854, 85 L.Ed. 1271, 133 A.L.R. 1217. It is self-evident, we think, that it would materially aid in effectuating the policies of the Act, for the workmen in industry generally to feel assured that they would be protected, as fully as soundly possible, not merely in the exercise of their right of self-organization and designation of representatives of their own choosing, but against the economic consequences of a legitimate assertion of those rights. The experience of the Board, as reflected in its decisions, demonstrates the need for this assurance.

There could be no real force in such an assurance, however, if the Board's order awarding back pay in a particular case would not actually be made effectual. An unvindicated or paper decree would hardly tend to encourage self-organization efforts and peaceful industrial relations. And so, public policy cannot permit such a valid order of the Board to be thwarted or escaped, if there is any sound way to prevent it. The mere fact that an employer may cease to do business certainly does not end the public interest involved in seeing that a back pay award under the Act is satisfied.[1] The public wrong that has been done cannot be regarded as being righted by the simple expedient of the employer's resort to bankruptcy, so that it can be judicially declared that payment of the back pay award will no longer serve any useful purpose in effectuating the policies of the Act, as was assumed by the Referee and the District Court.

■ The order of this Court, affirming and directing payment of the back pay award, stamped it with finality as a definite and enforcible obligation against the employer. 29 U.S.C.A. § 160(e); Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 48, 49, 58 S.Ct. 459, 82 L.Ed. 638; In re National Labor Relations Board, 304 U.S. 486, 495, 58 S.Ct. 1001, 82 L.Ed. 1482. From that time on at least, it be-

came for all applicable legal purposes, a retroactive and accumulating "indebtedness due to the [Board] for and on behalf of the * * * employees." National Labor Relations Board v. Carlisle Lumber Co., 9 Cir., 108 F.2d 188, 189.

■ It was an indebtedness arising out of an obligation imposed by statute; hence was quasi contractual in nature; constituted therefore a claim on an implied contract under section 63, sub. a(4) of the Bankruptcy Act, 11 U.S.C.A. 103, sub. a (4); and so was a provable debt in bankruptcy. United States v. Bernstein, 8 Cir., 16 F.2d 233, 235; Brown v. O'Keefe, 300 U.S. 598, 606, 57 S.Ct. 543, 81 L.Ed. 827; National Labor Relations Board v. Piqua Munising Wood Products Co., 6 Cir., 109 F.2d 552, 556.

■ It was an obligation or indebtedness of a public character, which the Board alone was authorized to enforce.[2] Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 265, 266, 60 S.Ct. 561, 84 L.Ed. 738; National Labor Relations Board v. Hearst, 9 Cir., 102 F.2d 658, 664; Agwilines, Inc., v. National Labor Relations Board, 5 Cir., 87 F.2d 146, 150. "The Board acts in a public capacity to give effect to the declared public policy of the Act * * *." National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 362, 60 S.Ct. 569, 576, 84 L.Ed. 799. The Board's status with respect to the back pay allowances was, as to the employees entitled to the benefits of the order, in the nature of a plenary trusteeship.[3] Since the Act constituted it the only party entitled to seek enforcement, it could properly be said to hold the full legal title to the obligations which the order created, within any technical concept that might be necessary in the situation. The Board was therefore a creditor under the Bankruptcy Act, within the definition of § 1(11), 11 U.S.C.A. § 1(11), providing that " 'Creditor' shall include

---

[1] Compare National Labor Relations Board v. Colten, 6 Cir., 105 F.2d 179, where the death of a partner and the resulting dissolution of the partnership were held not to nullify the Board's order of reinstatement and back pay.

[2] Thus, it has been held that only the Board has the right to institute proceedings to punish for contempt of the court decree enforcing the Board's order (Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 265, 266,

60 S.Ct. 561, 84 L.Ed. 738), and to compromise an award of back pay to a wrongfully discharged employee (National Labor Relations Board v. American Potash & Chemical Corp., 9 Cir., 113 F.2d 232, 129 A.L.R. 874).

[3] The Board's brief states that its present practice is for the Board or one of its agents to receive back pay payments, and to make distribution of the money to the entitled employees.

anyone who owns a debt, demand, or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy". Such a recognition is not in conflict, but in harmony, with the provisions of the National Labor Relations Act and its public purposes. The fact that under the terms of the Board's order, the employer might have discharged his legal obligation, by making payment to the employees direct, does not, as the trustee in bankruptcy attempts to argue, affect the Board's right to seek enforcement in its own name, where no such satisfaction has in fact occurred.

▆▆▆▆▆ Nor is there any merit in the trustee's contention that the amount of the claim was undeterminable, for provable purposes in bankruptcy, because no offer of reinstatement ever had been or could now be made to the employees. The claim was a cumulating one, up to the time of bankruptcy at least, and, if the effect of that proceeding was to nullify, or render incapable of enforcement, the reinstatement obligation, it certainly did not wipe out or make undeterminable the amount of back pay, payable to that date. The right to back pay, under a valid order of the Board, obviously does not depend upon whether the reinstatement obligation is satisfied. If reinstatement becomes impossible, the back pay obligation is nevertheless enforcible for the period, during which the right to reinstatement existed.[4] Under 11 U.S.C.A. § 638, the adjudication in bankruptcy in this case was effective from the date the reorganization proceedings had been instituted, and the Board clearly had the right to compute and file a claim, as it did, for the back pay that had accumulated to that date.

The Board urges that its claim should be given priority under § 64, sub. a(5) of the Bankruptcy Act,[5] 11 U.S.C.A. § 104, sub. a(5), as a debt owing to the United States, and so entitled to preference under R.S. § 3466, 31 U.S.C.A. § 191. It relies upon Bramwell v. United States Fidelity & Guaranty Co., 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368, where monies intended for the benefit of Indian wards, which had been deposited by the Superintendent of the Indian Reservation in a bank that subsequently became insolvent, were held to be entitled to priority as a debt owing to the United States.

The purpose of a back pay allowance under the National Labor Relations Act, when awarded by the Board to effectuate the policies of the Act, is, as has been indicated above, to leave an employee, as nearly as possible, in the same situation that he would have occupied, if there had been no discrimination against him. As to the employee at least, it is, in a practical and sound legal sense, nothing more or less than wages. It is compensation to which he is entitled, by reason of his continued status under the Act as an employee, and which the Act and the order of the Board regard him as having constructively earned. The language of the Act specifically denominates it "back pay". It ought not therefore, equitably or in the spirit of the Act, to be given either a superior or a subordinate legal position to the wages of other regular employees, if there is any sound way to avoid doing so. To elevate it, for any purpose, above the corresponding rights of other employees would hardly tend to further industrial peace, which is the fundamental aim of the National Labor Relations Act. Similarly, to place it on a level in any degree lower than that of regular wage rights would deny it the position to which its denomination in the Act entitles it, and would dilute the equalizing purpose for which it was intended.

Any sound consideration of the question of priorities must therefore have regard for

---

[4] In National Labor Relations Board v. Hearst, 9 Cir., 102 F.2d 658, 664, the estate of a deceased employee, who had been ordered reinstated with back pay, was held entitled to the back pay that had accumulated up to the time of his death.

It appears also from the opinion in Phelps Dodge Corporation v. National Labor Relations Board, supra, that the Board in that case ordered one of the strikers "made whole for loss in wages up to the time he became unemployable."

[5] Section 64, sub. a in part provides: "a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (2) wages, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; * * * (5) debts owing to any person, including the United States, who by the laws of the United States is entitled to priority * * * ".

614

the position and rights of all employees in the bankruptcy situation. Under § 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, wage claims "not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding", are placed in the class of second priority. Debts owing to the United States, in their full amount, are placed in the class of fifth priority. If a back pay allowance is not to have the advantage, with other wage claims, of the second priority, it necessarily. is in an unequal position as to the amount for which this high preference is allowed by the Bankruptcy Act. On the other hand, if there are unpaid wage claims beyond the amount of such a preference, other employees, with the status of mere general creditors as to their remaining balances, would be prejudiced by having back pay allowances paid in full as debts due the United States in the fifth priority.

The record does not indicate anything as to the amount of wage claims that have been filed in the present proceeding, or as to the value of the estate. In searching for the sound general principle, however, that should govern such a situation, we necessarily are not so much concerned with the facts of an individual case, as with the realities and probabilities of the field as a whole. We are of the opinion that a back pay allowance should accordingly be treated the same as any regular wage claim, for bankruptcy purposes, unless we are prevented from doing so by the provisions of the Bankruptcy Act.

We have declared above that a back pay allowance, under the provisions of the National Labor Relations Act, is intended as, and constitutes, wages which a workman has constructively earned by reason of his continued status as an employee. This view clearly brings it within the operation of § 64, sub. a(2), 11 U.S.C.A. § 104, sub. a(2), governing wage priorities. If the Act had authorized such an allowance to be made in the nature of damages, a different situation would perhaps be presented. Congress has, however, specifically made it "back pay" in a continued employment status, and this sufficiently constitutes it "wages earned" to eliminate legal shadows.

Nor is any difficulty presented by the language of the Bankruptcy Act,

"not to exceed $600 *to each claimant*". (Italics supplied.) The Board is, in a sufficient sense, a separate trustee and claimant as to each employee involved, and it has duly itemized the amount to which each individual is entitled. Whether correct computations have been made and credits given is, of course, a proper question for the Referee, when the claim is ultimately considered.

Under the position here taken, we deem it unnecessary to determine whether an award of back pay may, for any other purpose, be regarded as a debt due to the United States.

The constitutional questions suggested are, under the interpretation made of the Act, sufficiently answered by National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352 and Agwilines, Inc., v. National Labor Relations Board, 5 Cir., 87 F.2d 146, and require no further discussion here.

The order of the District Court is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

VAN VALKENBURGH, Circuit Judge (dissenting).

I am unable to agree with my associates in their disposition of this appeal by reversal of the judgment of the trial court upon the motion to expunge the claim filed by the National Labor Relations Board in bankruptcy for the back pay awarded, alleging further that the claim was entitled to priority as a debt owing to the Board, and, therefore, to the United States, over all other claims, whether of administration or otherwise.

Incidentally, it may be added that there are in the hands of the referee insufficient funds to pay in full all such claims if allowable and allowed.

The hearing upon this motion by express agreement was confined to the validity of the Board's claim; no other issue was involved. At this hearing the Trustee in Bankruptcy offered and incorporated in the record the individual claims of the wage-earners whose names are scheduled in the Board's claim, and who have filed individual claims with the referee. These individual claims, offered and admitted in evidence, were omitted from the transcript

on this appeal at the request of counsel for the National Labor Relations Board. We have, therefore, only to determine in this appeal (a) whether the Board, as such, had authority to file this claim; and (b) if so whether it is entitled to priority as, in effect, a debt due the United States or one of its agencies. This latter claim is based upon 31 U.S.C.A. § 191, which provides that in cases of insolvency debts due to the United States shall first be satisfied. Counsel for the Board admit that appellant has no monetary interest in the claim, since neither it, nor the United States, for that matter, would receive the money if allowed as a claim in bankruptcy.

It appears to present itself in the guise of a plenary trusteeship, and states that its present practice is to receive back pay payments and to make distribution of the money to the entitled employees. But such practice, even though acquiesced in by the parties in interest, could confer no quality of trusteeship nor wardship, and none is granted by any Congressional Act. None of the cases cited by counsel for appellant, nor in the majority opinion, is authority for the governmental priority claimed.

Amalgamated Utility Workers (C.I.O.) v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738, is relied upon because it recognizes the Board, rather than a labor organization which filed the charges, as the proper party to apply for contempt proceedings against an employer for failure to obey a decree of enforcement. This opinion, and others cited fail utterly to recognize the Board or the Government as the party in interest, as a claimant, nominal or otherwise, of the awards made to discharged employees. The Board is recognized as an agency of government merely in a procedural sense in dealing with unfair labor practices; but neither are in any sense pecuniary beneficiaries. The court there was dealing with the necessity of discriminating between the Board as a procedural agent in court proceedings and private persons or groups, such as the unions interested. It was not attempting to expand the powers or authority of the Board beyond its functions as prescribed by Congress. It says: (309 U.S. loc. cit. 270, 60 S.Ct. loc. cit. 565, 84 L.Ed. 738) "The appropriate procedure to that end is to ask the court to punish the violation of its decree as a contempt". Reference then is made to the Conference Report that, if unfair labor practice is resumed, "there will be immediately available to the Board an existing court decree to serve as a basis for contempt proceedings." Civil contempt, of course.

In case of bankruptcy the function of the Board as a procedural agency to assure protection from unfair labor practice, if resumed, has been exhausted. Relief to the wage-earner, if one remains, must be through application to the court. His award is a personal one, not a public or punitive one. It is the court's decree, not title in the government nor its procedural agency, that is the basis of the redress awarded. If the wage-earner has a judgment that can be enforced as a claim in bankruptcy he, and not a procedural agent, has authority to present it. Undoubtedly Congress might so expand the functions of the Board, but it has not done so either expressly or inferentially.

A significant limitation of the Board's authority is found in Republic Steel Corporation v. National Labor Relations Board, et al., 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6 wherein it is held:

"The National Labor Relations Board, having ordered the reinstatement with back pay of employees found to have been discharged or denied reinstatement in violation of the National Labor Relations Act, and having directed the employer to deduct from the back pay such amounts as were received by the employees from governmental agencies for services performed meanwhile on work relief projects, was without authority further to require the employer to pay over to the governmental agencies the amounts so deducted."

"We do not think that Congress intended to vest in the Board a virtually unlimited discretion to devise punitive measures, and thus to prescribe penalties or fines which the Board may think would effectuate the policies of the Act. We have said that 'this authority to order affirmative action does not go so far as to confer a punitive jurisdiction enabling the Board to inflict upon the employer any penalty it may choose because he is engaged in unfair labor practices, even though the Board be of the opinion that the policies of the Act might be effectuated by such an order'. We have said that the power to command affirmative action is remedial, not punitive." (311 U.S. 7, 11, 12, 61 S.Ct. 77, 79, 85 L.Ed. 6.)

This, by strong inference, denies to the Board the governmental status claimed by it.

While it would seem that the Board has exhausted its function to assure protection from unfair conduct on the part of this bankrupt, it is unnecessary for the disposition of the only issue presented in this appeal to do more than hold that the judgment on the motion to expunge be affirmed on the ground that the Board was without authority to file the claim. Such is my view. Even the plea of convenience is lacking. The real claimants are present and their claims are on file. The substantial merits have not been presented. The case should go back, even under the majority opinion, to determine the rights of the individual claimants, and for a sound consideration of the question of priorities in the bankruptcy situation presented.