In re **WHEELING–PITTSBURGH STEEL CORPORATION**, et al., Debtor.

**Bankruptcy No. 85–793 PGH.**
**Motion No. 88–783.**

United States Bankruptcy Court, W.D. Pennsylvania.

April 23, 1990.

George L. Cass, Pittsburgh, Pa., for debtor.

Margery E. Lieber, Washington, D.C., for N.L.R.B.

Robert G. Sable, Pittsburgh, Pa., for Official Committee of Unsecured Creditors.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Facts

Wheeling–Pittsburgh Steel Corporation ("Debtor") terminated the employment of Ernest B. Swiger ("Swiger") on February 25, 1981. Swiger subsequently filed a charge with the National Labor Relations Board ("NLRB"). The NLRB found that the Debtor had violated the National Labor Relations Act ("NLRA") and ordered that the Debtor reinstate Swiger and make him whole for any lost wages and benefits. *See Wheeling–Pittsburgh Steel Corporation,* 277 N.L.R.B. 1388 (1985).

The Debtor filed its bankruptcy petition on April 16, 1985. Thereafter, on July 12, 1987, the Court of Appeals for the Sixth Circuit ordered enforcement of the NLRB decision.

The Debtor reinstated Swiger's employment on July 20, 1987, immediately following the Sixth Court decision.

The NLRB filed a proof of claim (the "Claim") on behalf of Swiger. The NLRB asserts that the portion of the Claim computed for the postpetition period, $57,698.91, is entitled to priority pursuant to 11 U.S.C. § 507(a)(1) and that an additional $2,000, computed for the period within 90 days before bankruptcy, is entitled to priority pursuant to 11 U.S.C. § 507(a)(3) and (4). The NLRB asserts that the remaining portion of the Claim, being computed for a prepetition period, is allowable but only as a general unsecured claim.

The Debtor contends that the Claim is not entitled to administrative priority because it does not represent a cost or expense of preserving the estate and is not a claim for wages for services rendered after the petition was filed. The Debtor also contends that the Claim is not entitled to wage priority or employee benefit plan priority because no wages were earned 90 days prior to filing and that there were no contributions due to a benefit plan for services rendered within 180 days of filing.

The Official Committee of Unsecured Creditors (the "Committee") takes the position that the Claim should be subject to two limitations: (1) the entire claim should be allowable only as a general unsecured claim and (2) the amount of the claim should be for no more than one year's

wages for the period between February 25, 1981, the day Swiger was discharged, through February 24, 1982, pursuant to 11 U.S.C. § 502(b)(7). The Debtor supports this position.

### Issue

What is the allowability and priority in bankruptcy of a claim arising under an NLRB order of back pay and reinstatement?

### Discussion

This case involves a conflict between the policies of the NLRA to make workers whole for losses suffered on account of an unfair labor practice and of the Bankruptcy Code to permit successful rehabilitation of debtors by balancing the interests of the affected parties—the debtor, creditors, and employees. *See, e.g., NLRB v. Killoren,* 122 F.2d 609 (8th Cir.1941); and *NLRB v. Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1983).

■ Once the NLRB has completed its determination of the amount of monetary compensation owed by the Debtor as a result of an unfair labor practice, the priority and allowability of claims resulting from an NLRB award is answered from the Bankruptcy Code. *Nathanson v. NLRB,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952); *NLRB v. Martin Arsham Sewing Co.,* 873 F.2d 884 (6th Cir.1989); and *In re Tuscon Yellow Cab Co., Inc.,* 27 B.R. 621 (9th Cir.BAP 1983).

■ Bankruptcy Code § 507(a)(1) provides priority for "administrative expenses allowed under § 503(b) of this title;" § 503(b)(1)(A) describes administrative costs as "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." § 507(a)(3)(A) further provides priority status for "allowed unsecured claims for wages ... earned by an individual within 90 days before the date of the filing of the petition ..." to a maximum of $2,000 per individual.

§ 502(b)(7) of the Bankruptcy Code provides:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

.    .    .    .    .

(7) if such a claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates; ...

11 U.S.C. § 502(b)(7).

The NLRB argues that *NLRB v. Killoren,* 122 F.2d 609 (8th Cir.1941), *Nathanson v. NLRB,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), *In re Bel Air Chateau Hospital, Inc.,* 106 LRRM 2834 (Bankr.C.D.Cal.1980), *Durand v. NLRB (In re Turney Wood Products, Inc.),* 296 F.Supp. 1049 (W.D.Ark.1969), and *In re Brinke Transportation, Inc.,* Case No. 87–00385 (Bankr.D.N.J.1989) mandate that NLRB back-pay awards be treated as wages and that claims for back-pay awards should be entitled to priority status.

Although these cases appear to support the NLRB's position, upon careful examination, we find that these decisions are not dispositive and that the NLRB's argument must fail.

In *Brinke Transportation,* the court held that postpetition costs of compliance with the NLRA constitutes an administrative expense. The court limited the appli-

cation of its holding by stating that the employer must have received consideration for the debt (the cost of compliance) during the postpetition period. The court did not explain or define what, if any, postpetition consideration or benefit the debtor's estate received for the postpetition payment for work not performed. The court did state that the consideration for back-pay liability is tendered on a daily basis citing *In re Bel Air Chateau Hospital, Inc.,* 106 LRRM 2834 (Bankr.C.D.Cal.1980) and *Durand v. NLRB (In re Turney Wood Products, Inc.),* 296 F.Supp. 1049 (W.D.Ark.1969) in support of its conclusion.

We do not agree with the analysis or result of the *Brinke Transportation* decision. We believe the court misinterpreted the cases cited in support of the conclusion that a back pay award resulting from prepetition acts can give rise to a priority claim for a period when the employee was not working and did not render any benefit to the estate. The case of *Durand v. NLRB* is directly contrary to such a conclusion, and *In re Bel Air Chateau Hospital, Inc.* cannot be fairly interpreted to stand for such a conclusion.

In *Durand,* the debtor's plant closed down prior to the bankruptcy filing. Shortly thereafter, when the debtor did file a voluntary petition in bankruptcy, it was immediately adjudicated a bankrupt. The employees who worked during the two weeks ending with the plant closure prior to the bankruptcy filing were not paid.[1] It was decided that the plant should be operated pending liquidation and a receiver, who subsequently became the trustee, was appointed. The receiver rejected the collective bargaining agreement and reopened the plant with a reduced work force at reduced wages with the Bankruptcy Referee's approval. As a result, the NLRB issued a complaint and ultimately found that the trustee committed certain unfair labor practices and recommended back pay

awards to certain employees. Consequently, the status of the recommended back pay awards became an issue.

The NLRB argued that the back pay awards would amount to post-bankruptcy "wages," and therefore were entitled to § 64(a)(1) priority as "expenses of administration."[2] The trustee denied that the potential awards were entitled to any particular priority while the secured creditors argued that their liens took precedence over the § 64(a)(2) wage claimants and also over any back pay awards if such awards were entitled to § 64(a)(1) priority. The court pointed out that:

> If the Regional Director is correct, the back pay awards ... would come ahead of the claims[3] of the same former employees for compensation for work actually performed and about which there is no dispute.

Addressing the priority status of back-pay awards in a bankruptcy proceeding, the *Durand* court noted and applied the holdings of *Nathanson v. NLRB,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952) and *NLRB v. Killoren,* 122 F.2d 609 (8th Cir.1941) in granting second priority status to the wage claims for the two week period prior to the bankruptcy filing. The court also stated:

> A claim based upon a back pay award for the period immediately preceding bankruptcy is considered to be a claim for wages for § 64(a)(2) purposes, *Nathanson v. NLRB* and *NLRB v. Killoren,* both supra. And the court will assume *arguendo* that a claim based upon a back pay award for a period following bankruptcy qualifies as wages for the purposes of § 64(a)(1).

However, the *Durand* court continued by stating:

> The court cannot forbear saying, however, that in this case the court's assumption creates a situation where the potential back pay awards in favor of the 42 involved employees based on a period

---

1. It was not disputed that the employees who worked during the two week period prior to the bankruptcy filing, and were not paid, had wage claims that were entitled to second priority status under § 64(a)(2) of the Bankruptcy Act.

2. Bankruptcy Code § 503(b)(1)(A) is derived from § 64(a)(1) of the Bankruptcy Act.

3. The wage claims for the two week period prior to bankruptcy.

of time during which they did not work will have a higher priority in bankruptcy than their liquidated claims under § 64(a)(2) for compensation for time during which they actually worked. That situation is somewhat ironical to say the least.

Although the court assumed that the back pay awards were entitled to share the same priority status as other wage claims, the court did not allow the back pay awards to share the "costs of administration" priority status under § 64(a)(1). Under the Bankruptcy Act, priority claims including expenses of administration did not take precedence over liens which were valid against the trustee unless the costs of administration actually benefited the lien interests. Addressing the postpetition status of the back pay awards under this exception, the court stated:

> taking money out of the bankruptcy estate to pay back wages to persons who did not work is certainly of no benefit to the estate or to security interests therein; on the contrary, such a course is in the highest degree detrimental to the estate and to secured creditors.

Thus, the court refused to grant potential back pay awards priority status under § 64(a)(1) as a cost of administration. Based on the foregoing, we cannot follow the *Brinke Transportation* interpretation of *Durand v. NLRB* to support the proposition that "courts apportion administration priority status to all back pay liability incurred after the petition was filed."

We also find that *In re Bel Air Chateau Hospital, Inc.*, 106 LRRM 2834 (Bankr.C.D.Cal.1980) is not controlling, nor does the case directly support the proposition that the court ought to grant administrative priority status to liability accruing postpetition under a back pay award arising from a prepetition event. In *Bel Air*, the court was not presented with a back pay award arising from a prepetition event. The back pay award arose from the debtor's *post* petition refusal to bargain. Thus, the Bankruptcy Court would have been correct in holding that the "effects" of the debtor's unfair labor practices committed postpetition may be construed as "actual, neces-

sary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). *See, Yorke v. NLRB*, 709 F.2d 1138, 1143 (7th Cir.1983) (back pay award would be entitled to administrative priority: "Since the obligation arises only with the trustee's decision to terminate operations in the overall interests of the creditors, the cost concomitant with that decision properly can be attributed to the trustee's efforts to preserve the estate on the creditors' behalf." *See also Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) (Claim arising from the negligence of the trustee in bankruptcy was entitled to priority status, even though the estate would not benefit therefrom); *Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*, 755 F.2d 200 (1st Cir.1985) (Postpetition portion of fine for continued violation of temporary injunction allowed as administrative claim since the decision to continue in violation of the injunction was a deliberate and intentional act to profit the debtor's estate; *and Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.*, 443 F.2d 867 (2d Cir.1971) (Court refused to enjoin the debtor from using a patent postpetition when the validity of the patent was in issue stating, in dicta, that damages for infringing the patent in the course of sales made for profit would seem an *a fortiori* case for priority status.).

However, the *Bel Air* court did not base its decision on the rationale above. Rather, the court based its decision on two alternative holdings. Under its initial line of reasoning, the court stated that:

> Back pay under the National Labor Relations Act is compensation to which employees are entitled by reason of their continued status under the Labor Act as employees, and which the Labor Act regards as having been constructively earned. *NLRB v. Killoren*, 122 F.2d 609, 613 (8th Cir.1941). A back pay award, therefore, must be treated the same as any regular wage claim for bankruptcy purposes. *Id.*, at 614; *see Nathanson v. NLRB*, 344 U.S. at 29 [73 S.Ct. at 83] ("We can find in the Bankruptcy Act no warrant for giving these

back pay awards any different treatment than other wage claims enjoy.")

The *Bel Air* court made a quantum leap in reasoning by holding that the NLRB's back pay claim for wages constructively earned by employees during the Chapter XI operation was entitled to § 64(a)(1) priority because regular wage claims earned during Chapter XI operations were costs of administration under § 64(a)(1), citing 3A *Collier on Bankruptcy,* ¶ 64.202[3], ¶ 64.105[2] and *In re Wil–Low Cafeterias,* 111 F.2d 429, 432 (2d Cir.1940). The authorities cited only support the conclusion that wages actually earned constitute costs of administration. The *Bel Air* court failed to address the requirement that, to be entitled to § 64(a)(1) priority, the cost or expenses must be actual, necessary and must benefit the estate. This failure is a fatal flaw to the court's first holding.

The *Bel Air* court's alternative holding is also flawed. The court held that it would violate public policy not to grant priority status to back pay claims which accrue during the operation of the business in Chapter XI, the court opined that, as a practical matter, if such a claim was denied priority status and treated as general unsecured claims, then such NLRB orders would be rendered ineffectual. Conversely, the court reasoned that by granting the Board's back pay claim administrative priority, the operator of a business in Chapter XI would have an incentive to comply with the Labor Act, rather than violate the Act when it would otherwise be expedient to do so. This line of reasoning, however, ignores the Supreme Court's decision of *Nathanson v. NLRB* in which the court stated that the policy of Labor Act was "fully served by recognizing the claim for back pay as one to be paid from the estate and that the relative priority of the claim is governed by the Bankruptcy Act." 344 U.S. at 28, 73 S.Ct. at 82. Thus, based on our analysis above, we believe that *In re Bel Air Chateau Hospital, Inc.* does not support the proposition for which it is cited in the *Brinke Transportation* decision, nor is it persuasive authority for the NLRB's position in this case.

The NLRB could also argue that there is a postpetition benefit to the estate (necessary under § 503 to support an administrative claim for wages during a time Swiger did not work)—that postpetition benefit is the labor performed by the entire work force (which kept the plants operating) which would not have been performed but for an implied understanding that they collectively, and each worker individually, would receive in full and without reduction each and every benefit the NLRA allows, irrespective of the impact of laws relating to bankruptcy.

That argument is, however, negated by the fact that after the improper discharge, the Debtor and the union renegotiated their collective bargaining agreements with no provision for Swiger or anyone in his situation. Hence, the plain words and meaning of the Bankruptcy Code must prevail. To do otherwise would impress upon innocent creditors a penalty by diminution of the Debtor's estate which was not contemplated by the Bankruptcy Code. As the Supreme Court stated in *Nathanson v. NLRB:*

> The contest now is no longer between employees and management, but between various classes of creditors. The policy of the National Labor Relations Act is fully served by recognizing the claim for back pay as one to be paid from the estate. The question whether it should be paid in preference to other creditors is a question to be answered from the Bankruptcy Act ... We can find in the Bankruptcy Act no warrant for giving these back-pay awards any different treatment than other wage claims enjoy.

344 U.S. at 28–29, 73 S.Ct. at 83.

There being no postpetition benefit to the estate and no postpetition conduct to justify the allowance of the back-pay award as priority claim, we will reclassify the Claim as a general unsecured claim.

The Committee and the Debtor further argue that the amount of the Swiger claim should be limited to one year's wages by § 502(b)(7) of the Bankruptcy Code. We agree with this contention.

Section 502(b)(7) is a new provision in the Bankruptcy Code and has no predecessor under the Bankruptcy Act. Congress intended that a debtor's estate not be subjected to wage claims arising from an employment contract that exceeds one year's compensation; no exception is provided for claims made under collective bargaining agreements or NLRB orders. *See In re N & T Associates, Inc.*, 78 B.R. 285 (Bankr.D. Nev.1987), (claim filed by union for wages due to former employee of the debtor under an arbitration award was limited to one year's wages from the date of discharge); *In re Continental Airlines Corp.*, 64 B.R. 865 (Bankr.S.D.Tex.1987) (damages arising out of breaches of collective bargaining agreements are limited by § 502(b)(7)); *and In re Courtland Container Corp.*, 30 B.R. 715 (Bankr.N.D.Ohio 1983) (damages arising out of breaches of collective bargaining agreements are limited by § 502(b)(7)). Nor would it be consistent to hold that Swiger would be entitled to a general unsecured claim up to the period three months prior to the date the Debtor filed its bankruptcy petition, a priority claim for $2,000 during the three months prior to the petition, and then a general unsecured claim thereafter.

For the foregoing reasons, we will grant the Debtor's Motion to Reclassify Swiger's proof of claim and reduce the proof of claim to reflect only one year's wages, i.e., for the period between February 25, 1981, the date Swiger was discharged, through February 24, 1982, one year thereafter. As this year does not fall within the period 180 days prior to bankruptcy, no priority will be allowed under Bankruptcy Code § 507(a)(3) and § 507(a)(4).

A separate order shall be issued.