**In re PALAU CORPORATION, Debtor.**

**NATIONAL LABOR RELATIONS BOARD, Appellant,**

v.

**Edward M. WALSH, Trustee for Palau Corporation, Appellee.**

**BAP No. NC–91–2101–MeRPe.**
**Bankruptcy No. 3–80–02354.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 18, 1992.

Decided May 13, 1992.

Corinna L. Metcalf, Washington, D.C., for N.L.R.B.

Linda Sorensen, San Francisco, Cal., for Edward M. Walsh, Trustee.

Before: MEYERS, RUSSELL and PERRIS, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

The National Labor Relations Board ("Board") appeals from the order of the bankruptcy court which denied administrative priority to its claim for postpetition backpay that accrued to an individual wrongfully discharged prepetition by Palau Corporation ("Debtor").

### II

### FACTS

The Debtor was a business engaged in repairing ships. From July 1, 1980 to June 30, 1983, the Debtor was party to a collective bargaining agreement which governed its working relationship with its repair and maintenance employees.

On November 3, 1980, the Debtor laid off Ralph Montoya ("Montoya") and Michael Cook ("Cook"). Consequently, on November 13, 1980, Montoya filed charges with the Board alleging that the Debtor had engaged in unfair labor practices. On December 10, 1980, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code ("Code").

On January 30, 1981, the Board issued a complaint against the Debtor. One year later, on January 28, 1982, an administrative law judge held that the Debtor had violated the National Labor Relations Act ("NLRA") by laying off Montoya and Cook. The Debtor was ordered to offer Montoya and Cook immediate and full reinstatement and to make each of them whole for any loss of earnings suffered as a result of the violation. The Board alleges that Montoya and Cook were never reinstated.

On February 7, 1982, the case was converted to Chapter 7 and the Debtor ceased operations. The Board filed a proof of claim for wages due to Cook only. Pursuant to Section 507(a)(3) [1] of the Code, the Board claimed $2,000 for prepetition backpay which accrued from the date of Cook's discharge to the date the Chapter 11 petition was filed. Pursuant to Section 507(a)(1) [2], the Board claimed $10,587.40 for postpetition backpay which accrued from the date of the Chapter 11 filing to the date the case was converted to Chapter 7. The Board asserted that the postpetition backpay was an administrative expense under Section 503(b)(1)(A).[3]

On October 10, 1991, the bankruptcy court issued an amended order allowing the Board's claim for prepetition backpay pursuant to Section 507(a)(3). The court, however, treated the Board's claim for postpetition backpay as a general unsecured claim rather than as an administrative expense. The Board appeals.

### III

### STANDARD OF REVIEW

Issues of statutory interpretation are questions of law subject to *de novo* review. *In re Sun Runner Marine, Inc.*, 134 B.R. 4, 5 (9th Cir.BAP 1991); *In re Financial Corp. of America*, 114 B.R. 221, 223 (9th

---

**1.** Section 507(a)(3) provides in relevant part: "The following expenses and claims have priority in the following order: Third, allowed unsecured claims for wages, salaries, or commissions ... (A) earned by an individual within 90 days before the date of the filing of the petition ... but only (B) to the extent of $2,000 for each such individual." 11 U.S.C. § 507(a)(3).

**2.** Section 507(a)(1) provides in relevant part: "The following expenses and claims have priority in the following order: First, administrative expenses allowed under section 503(b)...." 11 U.S.C. § 507(a)(1).

**3.** Section 503(b)(1)(A) provides in relevant part: "After notice and a hearing, there shall be allowed administrative expenses ... including the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A).

Cir.BAP 1990), *aff'd* 946 F.2d 689 (9th Cir. 1991).

## IV

## DISCUSSION

■ The policy reason for granting administrative expense priorities is to benefit the estate as a whole by subordinating the prebankruptcy claims of general creditors in order to secure goods and services necessary for an orderly and economical administration of the estate after the petition is filed. *In re Christian Life Center,* 821 F.2d 1370, 1373 (9th Cir.1987); *In re Yermakov,* 718 F.2d 1465, 1470 (9th Cir.1983). Thus, any claim for administrative expenses and costs under Section 503(b)(1)(A) must be for the actual and necessary costs of preserving the estate for the benefit of the creditors. *In re Dant & Russell, Inc.,* 853 F.2d 700, 706 (9th Cir.1988); *In re Club Development & Management Corp.,* 27 B.R. 610, 612 (9th Cir.BAP 1982).

■ The terms "actual" and "necessary" are construed narrowly in order to keep fees and administrative costs at a minimum. *In re Dant & Russell, Inc., supra,* 853 F.2d at 706. As a consequence, only those obligations of the debtor's estate which arise postpetition are entitled to administrative priority. *Matter of Pacific Far East Line, Inc.,* 713 F.2d 476, 478 (9th Cir.1983). However, even if a claim meets the postpetition requirement, the bankruptcy court has broad discretion in determining whether the claim should be accorded priority as an administrative expense. *In re Dant & Russell, supra,* 853 F.2d at 707; *In re Orvco, Inc.,* 95 B.R. 724, 728 (9th Cir.BAP 1989). The court's discretion is limited by the clear intent of Section 503(b)(1)(A) to grant priority status only to those claims which reflect the actual and necessary costs of preserving the estate. *In re Dant & Russell, supra,* 853 F.2d at 707.

■ In order for postpetition costs of compliance with the NLRA to constitute administrative expenses, the consideration for those costs must have been received during the postpetition period. *In re Brinke Transportation,* 135 L.R.R.M. 2769, 1989 WL 233147 (N.J.1989), *aff'd,* 135 L.R.R.M. 2800 (D.N.J.1989). Therefore, where the employee does not work during the postpetition period, there is no postpetition benefit to the estate and no postpetition conduct to justify the allowance of backpay as an administrative expense. *In re Wheeling–Pittsburgh Steel Corp.,* 113 B.R. 187, 192 (W.Pa.1990). Simply stated, taking money from the estate to pay back wages to an individual who did not work is detrimental, not beneficial to the estate. *Id.* at 191.

■ It is clear from the plain language of Section 503(b)(1)(A) that administrative priority is given only to those expenses which represent "services *rendered* after the commencement of the case." 11 U.S.C. § 503(b)(1)(A) (emphasis added). The term "render" means to perform, to give or to furnish. *Black's Law Dictionary* 1296 (6th ed. 1990); *Ballentine's Law Dictionary* 1090 (3d ed. 1969). *See Kingsley v. Baker/Beech–Nut Corp.,* 546 F.2d 1136, 1140 (5th Cir.1977). Because Cook did not perform, give or furnish any actual services to the Debtor, the Board's claim for backpay during the postpetition period does not represent actual or necessary costs of preserving the estate. Accordingly, the Board's claim is not entitled to administrative priority.

The Board contends, however, that the Debtor's failure to reinstate Cook was a violation of the order of the administrative law judge. Thus, the Board argues, the costs incurred as a result of such postpetition conduct should be treated as administrative expenses.

The Board first cites *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), which held that damages for a postpetition tort arising from the negligence of the receiver are an administrative expense.[4] The Court reasoned

---

**4.** The Court was interpreting Section 64a of the Bankruptcy Act from which Section 503(b)(1)(A) is derived. *In re Charlesbank*

that actual and necessary costs should include costs ordinarily incident to the operation of the business and should not be limited to costs without which rehabilitation would be impossible. *Id.* at 483, 88 S.Ct. at 1765–66.

The Board then relies on *In re Charlesbank Laundry, Inc.,* 755 F.2d 200 (1st Cir. 1985) which extended the reasoning of *Reading* to include as an administrative expense a fine for the violation of a prepetition injunction. The court in *In re Charlesbank Laundry* reasoned that if fairness dictates that a tort claim based on negligence should be paid ahead of prepetition claims, then an intentional act which violates the law and damages others should also be treated in the same manner. *Id.* at 203.

*Reading* and *Charlesbank Laundry,* however, are not dispositive here. Section 503(b)(1)(A) clearly establishes the treatment of *wages, salaries or commissions* as administrative expenses. Because accrued backpay is treated like regular wages under the Code, such wages are subject to the requirements of Section 503(b)(1)(A) and must represent services *rendered* in order to be granted administrative priority. *See N.L.R.B. v. Killoren,* 122 F.2d 609, 614 (8th Cir.1941).

## V

## CONCLUSION

Because no actual services were rendered by Cook after the Debtor's petition was filed, the Board's claim for postpetition backpay is not entitled to administrative priority and the claim may be treated as a general unsecured claim. The order of the bankruptcy court is AFFIRMED.

*Laundry, Inc.,* 755 F.2d 200, 202 n. 2 (1st Cir.    1985).