In re SHER–DEL FOODS, INC., Debtor.

Bankruptcy No. 93–11047 B.

United States Bankruptcy Court,
W.D. New York.

Sept. 13, 1995.

Penney, Maier, Wallach & Crowe (Mark S. Wallach, of counsel), Buffalo, NY, for trustee.

Rafael Aybar, Buffalo, NY, for Gen. Counsel, NLRB, Third Region.

CARL L. BUCKI, Bankruptcy Judge.

The Chapter 7 trustee of Sher–Del Foods, Inc., has objected to the allowance of a claim which the National Labor Relations Board filed as a priority on behalf of former employees to recover an award resulting from the failure to bargain over the effects of the prepetition closure of the debtor's business. At issue in this dispute is the character of such an award as wages and the determination of the time at which the award is deemed to have been earned for purposes of establishing priority under subdivisions 1 and 3 of section 507(a) of the Bankruptcy Code.

Sher–Del Foods, Inc. was a wholesale commissary and food purveyor to a chain of restaurants operated by an affiliated corporation, Your Host, Inc. Although a fixture on the restaurant landscape of Western New York for more than forty years, the Your Host chain had encountered serious financial problems prior to the close of 1992. With financial conditions deteriorating further during the early months of 1993, a decision to seek bankruptcy protection was reached on March 19 or 20. At that time, the Hotel and Restaurant Employees Union Local 4, AFL–CIO, served as the exclusive collective bargaining representative for various employees. Nonetheless, management chose to give no

prior notice of closing either to the employees or to their union. Business operations ceased on March 29 and 30. Both Sher–Del Foods and Your Host filed petitions for relief under Chapter 7 of the Bankruptcy Code on April 2, 1993.

Charging that Your Host and Sher–Del Foods had failed to bargain in good faith over the "effects" of closure, Union Local 4 filed complaints with the National Labor Relations Board on May 13 and June 29 of 1993. The Chapter 7 trustee responded to these complaints and appeared on behalf of both debtors.[1] As affirmed by the National Labor Relations Board, the decision of Administrative Law Judge Eleanor MacDonald found that Your Host and Sher–Del Foods had "closed their facilities without notice to the Union and without giving the Union an opportunity to bargain over the effects of the closing on the unit employees." In the view of the Administrative Judge, this conduct constituted "a clear violation of Respondents' duty to bargain pursuant to Section 8(a)(5)" of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (West 1973). In accord with the precedent of *Transmarine Navigation Corp.*, 170 N.L.R.B. 389 (1968), the Board granted a back pay award totaling a minimum of two weeks pay for each affected employee.

The National Labor Relations Board filed a proof of claim in the case of Sher–Del Foods, Inc., on August 18, 1993. In anticipation of a favorable ruling from the administrative judge, the claim requested a priority allowance under 11 U.S.C. § 507(a)(3) for the payment of any award resulting from the debtor's failure to bargain over the effects of closure. After the National Labor Relations Board issued its decision affirming such an award, the Chapter 7 trustee filed an objection in this Court to the Board's proof of claim.[2] Noting that the debtor had met its payroll for all weeks prior to the filing of its bankruptcy petition, the trustee contended that the back pay award constituted only constructive wages, not wages entitled to priority status as earned within 90 days of the filing of the bankruptcy petition. Rather, the trustee suggested that the NLRB claim be allowed either as a late-filed general unsecured claim, or as being in the nature of a penalty. Pursuant to 11 U.S.C. § 726, such classifications would limit the National Labor Relations Board to distributions only in the unlikely event that general unsecured creditors were to obtain payment in full. In its response, the National Labor Relations Board presented a further argument that its claim is an administrative expense entitled to priority under 11 U.S.C. § 507(a)(1).

 To the National Labor Relations Board is entrusted the exclusive authority to determine the amount of any award as remediation of an unfair labor practice. To the Bankruptcy Court is entrusted jurisdiction to determine the priority of distribution on account of any such award. These respective authorities are well settled in law. As stated by the Supreme Court in *Nathanson v. NLRB*, 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed. 23 (1952), the National Labor Relations Board is "the only party entitled to enforce" the National Labor Relations Act. The Board, not the Bankruptcy Court, has "authority to determine what measures will remedy the unfair labor practices" of a debtor. *Id.* at 30, 73 S.Ct. at 83. Among the functions "confided solely to the Board" is "the fixing of the back pay." *Id.* at 29, 73 S.Ct. at 83. On the other hand, "[t]he policy of the National Labor Relations Act is fully served by recognizing the claim for back pay

---

1. Nothing in this decision should be read to impose any duty on the trustee to respond to these complaints. Although the automatic stay does not necessarily preclude certain proceedings before the National Labor Relations Board [*NLRB v. 15th Ave. Iron Works, Inc.*, 964 F.2d 1336 (2nd Cir.1992)], the authorization of the appointing court is required to commence against the trustee any non-bankruptcy proceeding other than as prescribed by 28 U.S.C. § 959(a). Having never carried on the business of the debtor, the trustee was probably not suable

without leave of this Court. In the present instance, the trustee chose to appear voluntarily before the Board. Otherwise, before anyone presumes to bind a bankruptcy estate, consideration must be given to the scope of the trustee's operating authority.

2. The trustee has not objected at this time to that portion of the proof of claim which seeks to recover pension contributions and payments due to health and welfare trust funds.

as one to be paid from the estate. The question whether it should be paid in preference to other creditors is a question to be answered from" bankruptcy law. *Id.* at 28–29, 73 S.Ct. at 82–83. While this Court must defer to the NLRB's determination of liability, the Board's decision cannot bind the trustee to allowance of a particular priority, either expressly or by implication drawn from the language or analysis of the administrative law judge.

As in the present instance, one of the issues in the *Nathanson* case was whether a back pay award should enjoy a wage priority for purposes of a bankruptcy distribution. The Court found "no warrant for giving these back pay awards any different treatment than other wage claims enjoy." *Id.* at 29, 73 S.Ct. at 83. In so holding, the Supreme Court followed earlier precedent, that the NLRB's award of back pay is in the nature of earned wages. The Eighth Circuit Court of Appeals set forth the rationale for this result in its decision in *NLRB v. Killoren*, 122 F.2d 609, 613 (1941):

> The purpose of a back pay allowance under the National Labor Relations Act, when awarded by the Board to effectuate the policies of the Act, is ... to leave an employee, as nearly as possible, in the same situation that he would have occupied, if there had been no discrimination against him. As to the employee at least, it is, in a practical and sound legal sense, nothing more or less than wages. It is compensation to which he is entitled, by reason of his continued status under the Act as an employee, and which the Act and the order of the Board regard him as having constructively earned. The language of the Act specifically denominates it "back pay". It ought not therefore, equitably or in the spirit of the Act, to be given either a superior or a subordinate legal position to the wages of other regular

employees, if there is any sound way to avoid doing so.

■ The *Nathanson* and *Killoren* decisions interpreted the priority provisions of the Bankruptcy Act, which was predecessor to that version of the 1978 Bankruptcy Code that applies in the present instance. Notwithstanding their different time and monetary limits, both statutes are essentially identical in that they recognize a limited priority for "wages" earned immediately prior to the bankruptcy filing.[3] The essential conclusion of the Court in *Nathanson* and *Killoren* is that a back pay award under the National Labor Relations Act is in the nature of wages earned. Accordingly, the present back pay award will receive priority if it otherwise satisfies the other statutory requirements. Specifically, priority status will attach to those back pay awards that are earned within the time and monetary limits set forth in the Bankruptcy Code.

■ Section 507(a)(3) of the Bankruptcy Code recognizes a third priority for "wages ... earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first." In the present instance, Sher–Del filed a petition for relief under Chapter 7 on April 2, 1993. The back pay award arose from the debtor's failure to bargain over the effects of the closing that occurred on March 29 or 30. Because management made its closure decision earlier in March of 1993, the basis for a back pay award occurred no earlier than during that month. Outside of bankruptcy, the back pay award would be payable to all individuals affected by the debtor's failure to negotiate, without regard to length of employment. The wage claim for back pay must be said, therefore, to have been earned no earlier than March of 1993, this being a

---

3. Under the Act, the wage priority extended to wages and commissions "not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding." 11 U.S.C.A. § 104(a)(2) (West 1952) (Bankruptcy Act of 1898, § 64(a), repealed by Act of Nov. 6, 1978, Pub.L. 95–598, § 401(a), 92 Stat. 2682). As enacted in 1978, the Bankruptcy Code granted a similar priority to wages earned within 90 days of filing, for an amount not to exceed $2,000 per claimant. 11 U.S.C.A. § 507(a)(7) (West 1993). For cases filed after October 22, 1994, recent amendments to the Code have increased the dollar amount of this priority to $4,000. Act of Oct. 22, 1994, Pub.L. No. 103–394, § 108(c)(1), 108 Stat. 4106, 4112.

362

time within 90 days of the debtor's bankruptcy filing.

The back pay award arose from a failure to negotiate the effects of a termination that occurred during the 90 days prior to the debtor's bankruptcy filing. In this respect, the NLRA award is similar to damages under the Worker Adjustment and Retraining Notification Act (WARN) 29 U.S.C.A. §§ 2101–2109 (West Supp.1995), which requires that employees receive notice of termination at least sixty days prior to certain plant closings. Bankruptcy courts have accorded wage priority status to damages resulting from a violation of this statute. *See, e.g., In re Riker Industries, Inc.,* 151 B.R. 823 (Bankr.N.D.Ohio 1993). Particularly applicable to the present situation is the reasoning of Judge Edmonds in *In re Cargo, Inc.,* 138 B.R. 923, 927 (Bankr.N.D.Iowa 1992):

> There are two major types of severance pay—pay at termination in lieu of notice of termination and pay at termination based on the employee's length of service with the employer. WARN damages are more similar to the first type—pay at termination in lieu of notice. It is earned, not over a prior period of employment, but upon termination. (Citations omitted.)

In similar fashion, the employees of Sher–Del Foods earned their back pay award upon the debtor's failure to negotiate the effects of termination. The determination of priority status must follow from the occurrence of that failure.

At a minimum, subject to applicable dollar limitations, any distribution must accord a wage priority to the claim which the National Labor Relations Board filed on behalf of former employees. The Board contends further, however, that that claim should receive an even higher priority, in that it relates to the period of bankruptcy administration.[4] In support of this position, the Board argues that the duty to negotiate continued after the filing, that the award specifically granted back pay for a period commencing subsequent to the bankruptcy filing, that the award represents an actual expense, and that its payment is necessary to assure the trustee's postpetition compliance with labor law.

Section 507(a)(1) of the Bankruptcy Code recognizes a first priority for "administrative expenses allowed under section 503(b)." These include "the actual, necessary costs and expenses of preserving the estate, including wages ... for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). In the proper circumstances, therefore, an administrative claim may arise for wages that are due post filing. But such is not always the case. For employees terminated upon filing, for example, severance pay is treated as a prepetition claim even if contractually payable on a date subsequent to filing.[5] It is of no significance to this Court that the Administrative Law Judge couched her decision in terms of a prospective duty to bargain, and directed back pay during a period of negotiations that were to commence post-petition.[6] Entitlement to priority follows not from the date on which the wage claim matures, but from the date on which it is earned. Whether for

---

4. It may be argued that the Board's position risks disallowance of any priority status. If it were exclusively post-petition in character, the claim could not have arisen within ninety days of the bankruptcy filing, as required for a wage priority. On the other hand, administrative status does not necessarily occur whenever a claim matures after a petition is filed. As is hereafter explained, however, the critical consideration is not maturation of entitlement, but the date on which the underlying wages were earned.

5. *See In re Jeannette Corp.,* 118 B.R. 327, 329–330 (Bankr.W.D.Pa.1990). Such a claim may, however, be entitled to the lesser priority of a wage claim under 11 U.S.C. § 507(a)(3).

6. The authority to assess a back pay award does not necessarily empower an Administrative Law Judge to direct a liquidating trustee to undertake negotiations on behalf of a Chapter 7 estate. This Court does not now address the propriety of such a direction, inasmuch as the trustee disputes only the priority of the back pay award. It is to be noted, however, that Congress chose to delineate the duties of a trustee in section 704 of the Bankruptcy Code. Except as otherwise provided by statute (*see, e.g.* 28 U.S.C. § 959(a)), a trustee "is only answerable to the court by which he is appointed, and cannot be sued without its leave." *Barton v. Barbour,* 104 U.S. (14 Otto) 126, 130, 26 L.Ed. 672 (1881); *accord In re DeLorean Motor Co.,* 991 F.2d 1236 (6th Cir. 1993).

wages or for a back pay award, the standard for administrative priority is that which the Court of Appeals described in *Trustees of Amalgamated Insurance Fund v. McFarlin's*, 789 F.2d 98, 101 (2nd Cir.1986):

> [A]n expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession, and "only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." A debt is not entitled to priority simply because the right to payment arises after the debtor-in-possession has begun managing the estate. (Citations omitted.)

Based upon this standard, the Court in *McFarlin* denied administrative status to the claim of a pension fund for withdrawal liability arising from a prepetition termination of employment. The Judges reasoned that the consideration supporting the withdrawal liability was "the same as that supporting the pensions themselves, the past labor of the employees covered by the Plan." *Id.* at 101–102. Similarly, in the present instance, the employees performed no postpetition services at the behest of the trustee or for the benefit of the bankruptcy estate. Consideration for the back pay award derived from an employment relationship which ended prior to the bankruptcy filing. The estate received no postpetition benefit from that relationship and did not cause damage to any of the employees. Hence, the back pay award is prepetition in character and not entitled to the status of an administrative claim.[7]

In determining the administrative status of many claims, a critical factor is whether the trustee has administered the estate as an operating trustee, in contrast to administration as a liquidating trustee. A trustee under Chapter 7 may operate the business of the debtor only with the permission of the Bankruptcy Court. 11 U.S.C. § 721. Were

this Court to recognize an administrative claim for back wages, it would impose upon liquidating trustees an undue burden to undertake management responsibilities in instances where the trustee has no authority to operate a business. In the present instance, the back pay award arose from an alleged violation of section 8(a)(1) and (5) of the National Labor Relations Act. In relevant part, section 8(a) provides that "it shall be an unfair labor practice for an employer" to perform various acts. The trustee for Sher–Del Foods never sought authorization to operate the business of the debtor. Having no authority to employ anyone, he never assumed the status of an employer having the responsibilities set forth in section 8(a). Any breach of employer responsibility, therefore, could only have occurred in the context of the debtor's prepetition operations. Because those operations as well as the authority to operate ended upon the filing of the bankruptcy petition, the unfair labor practice was necessarily a prepetition event. Except in those rare instances where he or she may undertake to operate a business, a Chapter 7 trustee must liquidate the bankruptcy estate in accord with the commands of the Bankruptcy Code, rather than pursuant to negotiations with creditors. Accordingly, the back pay award against Sher–Del Foods could not possibly arise from conduct of the trustee, but must be charged to prepetition management.

The present result might have been different if either the trustee or a debtor-in-possession had operated the debtor's business subsequent to the bankruptcy filing. For this reason, the National Labor Relations Board misplaces its reliance upon the decisions in *Yorke v. NLRB*, 709 F.2d 1138 (7th Cir.1983) and *Matter of Tucson Yellow Cab Co., Inc.*, 789 F.2d 701 (9th Cir.1986). In both cases, the court accorded administrative priority to back pay awards based upon a failure to negotiate the effect of a post-peti-

---

7. The present facts are to be distinguished from those in *In re Chateaugay Corp.*, 53 F.3d 478 (2nd Cir.1995), which granted administrative status to obligations under the Coal Industry Retiree Health Benefit Act of 1992. Being in the nature of a tax, such obligations acquired administrative status despite the absence of any postpetition consideration. In contrast, a back pay award derives from rights under a collective bargaining agreement. Being contractual rather than statutory in origin, the back pay award will become administrative in character only when the bankruptcy estate benefits from a postpetition employment relationship.

tion closing of the business. For example, in *Yorke v. NLRB,* the Seventh Circuit found that the obligation to bargain arose "only with the Trustee's decision to terminate operations in the overall interests of the creditors." 709 F.2d at 1143. Accordingly, "the costs concomitant with that decision properly can be attributed to the Trustee's efforts to 'preserve the estate' on the creditors' behalf." *Id.* In contrast, when the decision to terminate occurs prepetition, the bargaining obligation is not attributable to any administrative activity of the trustee. Rather, the present facts are more closely akin to those in *In re Palau Corp.,* 18 F.3d 746, 751 (9th Cir. 1994), which affirmed the finding of the Bankruptcy Appellate Panel, that "where the employee does not work during the postpetition period, there is no postpetition benefit to the estate and no postpetition conduct to justify the allowance of backpay *(sic)* as an administrative expense." (Quoting *In re Palau Corp.,* 139 B.R. 942, 944 (9th Cir. BAP 1992)).

 Finally, the trustee contends that the NLRB claim should be subordinated due either to its nature as a penalty or to the lateness of filing. The National Labor Relations Act permits back pay awards for purposes of remediation only. As noted by the Supreme Court in *Republic Steel Corp. v. NLRB,* 311 U.S. 7, 10, 61 S.Ct. 77, 79, 85 L.Ed. 6 (1940), the Act "does not prescribe penalties or fines in vindication of public rights or provide indemnity against community losses as distinguished from the protection and compensation of employees." *Accord Manhattan Eye Ear & Throat Hosp. v. NLRB,* 942 F.2d 151 (2nd Cir.1991). Nothing in the decision of Administrative Law Judge MacDonald indicates a punitive purpose. Rather, her decision noted that the limited back pay award was "designed both to make whole the employees for losses suffered as a result of the violation and to recreate in some practicable manner a situation in which the parties' bargaining is not entirely devoid of economic consequences." Accordingly, no basis exists to apply that provision of 11 U.S.C. § 726(a)(4) which subordinates distributions on account of a "fine, penalty, or forfeiture." Although the National Labor Relations Board did not formally

file a claim until after the bar date established by this Court, the trustee had been made fully aware of the NLRB claim prior to that time. In any event, this lateness of filing would not affect a distribution on account of a priority claim. *United States v. Vecchio (In re Vecchio),* 20 F.3d 555 (2nd Cir.1994).

The claim of the National Labor Relations Board shall be allowed as a wage claim entitled to priority under 11 U.S.C. § 507(a)(3). When liquidated, this priority shall be subject to the monetary limit of $2,000 per employee, as set forth in this statute.

So ordered.